Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Beong-Soo Kim (SBN 212911)
bkim@jonesday.com
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539

Kimberly A. Dunne (SBN 142721)
kdunne@sidley.com
Sean A. Commons (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

Attorneys for Defendant Celgene Corporation
(*Additional Counsel listed on following page*)

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, the States of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WASHINGTON, WISCONSIN, the DISTRICT OF COLUMBIA, and the CITY OF CHICAGO,<br><br>                    Plaintiffs,<br><br>                    *Ex rel.*<br><br>BEVERLY BROWN,<br><br>                    Plaintiff-Relator,<br><br>          v.<br><br>CELGENE CORPORATION,<br><br>                    Defendant. | Case No. 10-cv-03165 GHK (SSx)<br><br>Assigned to: Hon. George H. King<br><br>**DEFENDANT CELGENE CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF-RELATOR'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF BEONG-SOO KIM**<br><br>**[Request for Judicial Notice and Proposed Order Filed Concurrently]**<br><br>Hearing Date:    June 23, 2014<br>Hearing Time:    9:30 a.m. |

Kristin Graham Koehler (admitted *pro hac vice*)
kkoehler@sidley.com
James C. Stansel (admitted *pro hac vice*)
jstansel@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC  20005
Telephone:  (202) 736-8000
Facsimile: (202) 736-8711

Toni-Ann Citera (admitted *pro hac vice*)
tcitera@jonesday.com
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-730

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on Monday, June 23, 2014, at 9:30 a.m. before the Honorable George H. King in Courtroom 650 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California, Defendant Celgene Corporation ("Celgene") will and does hereby move the Court, pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7-1 *et seq.*, for an order dismissing the Third Amended Complaint with prejudice.

This Motion is based upon this Notice; the attached Memorandum of Points and Authorities; the attached Appendix; the concurrently filed Request for Judicial Notice and its exhibits; all pleadings and papers on file herein; and any additional argument and material the Court may consider at the hearing on this Motion.

This Motion is made following the conference of counsel, pursuant to L.R. 7-3, which took place on April 2, 2014 and continued thereafter.  Declaration of Beong-Soo Kim, ¶2.

Dated:  April 25, 2014                JONES DAY AND SIDLEY AUSTIN LLP


By  /s/
     BEONG-SOO KIM

Attorneys for Defendant
CELGENE CORPORATION

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 1

STATEMENT OF THE CASE ............................................................................... 2

      A.    Thalomid® (thalidomide) ..................................................... 2

      B.    Revlimid® (lenalidomide) ..................................................... 3

      C.    Reimbursement for Off-Label Prescriptions ........................ 3

      D.    Brown's Complaints .............................................................. 4

LEGAL STANDARD ............................................................................................ 4

ARGUMENT .......................................................................................................... 5

I.      BROWN FAILS TO PLEAD THE ELEMENTS OF AN FCA CLAIM. ........... 5

      A.    Brown's Allegations Fail to Establish That Any Claim Was Materially False or Fraudulent. ........................................ 5

            1.    The Complaint Fails to Allege Any Express or Implied False Certification by an Entity Seeking Payment ................. 6

            2.    Brown Fails to Adequately or Plausibly Allege That the Off-Label Uses at Issue Were Not Medically Accepted. ........ 8

            3.    Alternatively, this Court Should Dismiss Those Claims that Cannot Give Rise to FCA Liability as a Matter of Law. ............ 9

            4.    Brown Cannot Establish Material Falsity Under the AKS or Stark Act. .................................................. 12

            5.    Brown Has Not Adequately Alleged Factual Falsity. .................. 14

      B.    Brown Does Not Adequately or Plausibly Allege Causation. ................. 14

II.      BROWN'S FCA ALLEGATIONS ARE DEFICIENT UNDER RULE 9(B). ............................................................................. 17

III.      BROWN'S STATE CLAIMS SHOULD ALSO BE DISMISSED. .................. 18

      A.    The State Claims Fail for the Same Reasons the FCA Claim Fails ......... 18

      B.    Brown Fails to Allege Compliance With State Pre-Filing Rules. ........... 19

      C.    Brown Cannot Apply Certain State Statutes Retroactively. .................... 20

      D.    The IFPA, Colorado, Minnesota, New Mexico, Texas, and Washington Claims Fail for Additional, Independent Reasons .............. 20

IV.    BROWN'S FEDERAL AND STATE CLAIMS ARE TIME-BARRED..........22

CONCLUSION...................................................................................23

APPENDIX A ...................................................................................24

DECLARATION OF BEONG-SOO KIM ..................................................26

SIGNATURE ATTESTATION

# TABLE OF AUTHORITIES

**Page**

## CASES

*Almendarez-Torres v. United States,*
    523 U.S. 224 (1998)...................................................................15

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................5, 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 554 (2007)...................................................................19

*Bly-Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001) ...................................................18

*Council for Urological Interests v. Sebelius,*
    946 F. Supp. 2d 91 (D.D.C. 2013)..............................................14

*Driscoll v. Todd Spencer M.D. Med. Group, Inc.,*
    No. 11-cv-01776-LJO-SMS, 2013 WL 6243858 (E.D. Cal. Dec. 3, 2013).......18

*E. Enters. v. Apfel,*
    524 U.S. 498 (1998)...................................................................20

*Ebeid ex rel. U.S. v. Lungwitz,*
    616 F.3d 993 (9th Cir. 2010) ...............................................passim

*Felarca v. Birgeneau,*
    No. 11-CV-5719 YGR, 2014 WL 206762 (N.D. Cal. Jan. 17, 2014)...............16

*Foglia v. Renal Ventures Mgmt., LLC,*
    830 F. Supp. 2d 8 (D.N.J. 2011)................................................19

*Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,*
    559 U.S. 280 (2010)..............................................................13, 20

*Harris v. County of Orange,*
    682 F.3d 1126 (9th Cir. 2012) .....................................................5

*Se. Laborers Health & Welfare Fund v. Bayer Corp.,*
    655 F. Supp. 2d 1270 (S.D. Fla. 2009)..........................................15

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ............................................................................... 4

*Sorrell v. IMS Health, Inc.*,
   131 S. Ct. 2653 (2011) ..................................................................................... 15

*State of California ex rel. Wilson v. Bristol Myers Squibb, Inc.*,
   No. BC367873 (Cal. Super. Ct. Sept. 12, 2013) ................................................ 20

*Strom ex rel. U.S. v. Scios, Inc.*,
   676 F. Supp. 2d 884 (N.D. Cal. 2009) .................................................................. 9

*U.S. ex rel. Aflatooni v. Kitsap Physicians Serv.*,
   314 F.3d 995 (9th Cir. 2002) ................................................................................ 5

*U.S. ex rel. Banignan v. Organon USA Inc.*,
   883 F. Supp. 2d 277 (D. Mass. 2012) ................................................................ 12

*U.S. ex rel. Bogart v. King Pharm.*,
   414 F. Supp. 2d 540 (E.D. Pa. 2006) ................................................................. 20

*U.S. ex rel. Booker v. Pfizer, Inc.*,
   No. 10-11166, 2014 WL 1271766 (D. Mass. Mar. 26, 2014) ............................ 10

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) .............................................................................. 5

*U.S. ex rel. Capriola v. Brightstar Educ. Grp., Inc.*,
   No. 1:11-CV-00135, 2013 WL 1499319 (E.D. Cal. Apr. 11, 2013) .................... 7

*U.S. ex rel. Conrad v. Grifols Biologicals Inc.*,
   No. RDB 07-3176, 2010 WL 2733321 (D. Md. July 9, 2010) .......................... 21

*U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*,
   587 F. Supp. 2d 805 (E.D. Tex. 2008) ......................................................... 22, 23

*U.S. ex rel. Fowler v. Caremark RX, Inc.*,
   No. 03 C 8714, 2006 WL 1519567 (N.D. Il. May 30, 2006) ............................ 20

*U.S. ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) .............................................................................. 17

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) ......................................................................... 5, 6

iv

*U.S. ex rel. Hess v. Sanofi-Synthelabo Inc.*,
   No. 4-05CV570 MLM, 2006 WL 1064127 (E.D. Mo. Apr. 21, 2006)..............16

*U.S. ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) ........................................................................5, 17

*U.S. ex rel. Hyatt v. Northrop Corp.*,
   91 F.3d 1211 (9th Cir. 1996) ...........................................................................22

*U.S. ex rel. Jajdelski v. Kaplan, Inc.*,
   517 F. App'x 534 (9th Cir. 2013).......................................................................17

*U.S. ex rel. Kennedy v. Aventis Pharm., Inc.*,
   610 F. Supp. 2d 938 (N.D. Ill. 2009)................................................................13

*U.S. ex rel. King v. Solvay*,
   823 F. Supp. 2d 472 (S.D. Tex. 2011)........................................8, 10, 20, 21, 23

*U.S. ex rel. Lampkin v. Johnson & Johnson*,
   No. 08-05362 (JAP), 2013 WL 2404238 (D.N.J. May 31, 2013)....................16

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) ....................................................................12, 18

*U.S. ex rel. Lujan v. Hughes Aircraft Co.*,
   243 F.3d 1181 (9th Cir. 2001) ..........................................................................21

*U.S. ex rel. McDermott v. Genentech*,
   No. 05-147-P-C, 2006 WL 3741920 (D. Me. Dec. 14, 2006)....................10, 11

*U.S. ex rel. Mikes v. Straus*,
   274 F.3d 687 (2d Cir. 2001) .............................................................................13

*U.S. ex rel. Nathan v. Takeda Pharms.*,
   No. 09-cv-1086 (AJT), 2011 WL 3911095 (E.D. Va. Sept. 6, 2011), *aff'd on other grounds,* 707 F.3d 451 (4th Cir. 2013) ..............................................15, 16

*U.S. ex rel. Nathan v. Takeda Pharms.*,
   707 F.3d 451 (4th Cir. 2013) ............................................................................17

*U.S. ex rel. Perry v. Hooker Creek Asphalt & Paving, LLC*,
   __ F. App'x __, No. 12-35278, 2014 WL 1244276 (9th Cir. Mar. 27, 2014) ...17

CELGENE'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

*U.S. ex rel. Petratos v. Genetech, Inc.*,
   No. 11-3691, 2014 WL 345322 (D.N.J. Jan. 30, 2014) .....................................10

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
   No. 04-CV-0704 (ERK), 2009 WL 1456582 (E.D.N.Y. May 22, 2009)...........15

*U.S. ex rel. Rostholder v. Omnicare, Inc.*,
   __ F.3d __, No. 12-2431, 2014 U.S. App. LEXIS 3269 (4th Cir. Feb. 21,
   2014) ........................................................................................................7

*U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,
   906 F. Supp. 2d 1264 (N.D. Ga. 2012).........................................19, 20

*U.S. ex rel. Sanders v. N. Am. Bus. Indus., Inc.*,
   546 F.3d 288 (4th Cir. 2008) ...............................................................22

*U.S. ex rel. Schmidt v. Celgene Corp.*,
   No. 4:11-cv-00094-RAS-DDB (E.D. Tex. Feb. 8, 2013) ....................21

*U.S. ex rel. Schmidt v. Zimmer, Inc.*,
   386 F.3d 235 (3d Cir. 2004) ................................................................15

*U.S. ex rel. Simpson v. Bayer Corp.*,
   No. 05-3895 (JLL) (JAD), 2014 U.S. Dist. LEXIS 51342 (D.N.J. Apr. 11,
   2014) ..........................................................................................7, 8, 9, 11

*U.S. ex rel. Texas v. Planned Parenthood Gulf Coast*,
   No. 9:09-cv-00124-RC, 2012 U.S. Dist. LEXIS 189118 (E.D. Tex. Aug. 10,
   2012) ........................................................................................................21

*U.S. ex rel. Wilkins v. United Health Grp.*,
   659 F.3d 295 (3d Cir. 2011) ..................................................................7

*U.S. ex rel. Worsfold v. Pfizer Inc.*,
   No. 09-11522, 2013 WL 6195790 (D. Mass. Nov. 22, 2013)...............9

*UFCW Local 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010) ................................................................15

*United States v. Bourseau*,
   531 F.3d 1159 (9th Cir. 2008) ...............................................................6

*United States v. Caronia*,
   703 F.3d 149 (2d Cir. 2012) ................................................................15

*United States v. Shill*,
  740 F.3d 1347 (9th Cir. 2014) ......................................................... 15

*Zeman ex rel. U.S. v. USC Univ. Hosp.*,
  No. CV 11-05755 DPP, 2013 WL 603920 (C.D. Cal. Feb. 19, 2013) .............. 18

STATUTES

6 Del. Code Ann. § 1203(b)(2) ............................................................ 19

6 Del. Code Ann. § 1209(a)(1) ............................................................ 22

21 U.S.C. § 301 ............................................................................ 7

31 U.S.C. § 3729(b)(4) .................................................................... 6

31 U.S.C. § 3731(b) ...................................................................... 22

42 U.S.C. § 1320a-7b ................................................................. 4, 13

42 U.S.C. § 1395nn ................................................................... 4, 14

42 U.S.C. § 1395w-101 .................................................................... 7

42 U.S.C. § 1395w-102(e) ........................................................ 3, 4, 8, 10

42 U.S.C. § 1395w-104(c) ................................................................ 11

42 U.S.C. § 1395x(t)(2) .......................................................... 3, 4, 8, 10

42 U.S.C. § 1396 ..................................................................... passim

63 Okla. St. Ann. § 5053.2(b)(2), (3) .................................................... 19

63 Okla. Stat. § 5053.6(B)(1) ........................................................... 22

740 Ill. Comp. Stat. 175/4(b)(2), (3) .................................................... 19

740 Ill. Comp. Stat. 175/5(b)(1) ........................................................ 22

Cal. Gov't Code § 12652(c)(3) ........................................................... 19

Cal. Gov't Code § 12654(a) .............................................................. 22

Cal. Ins. Code § 1871.7 .............................................................. 19, 23

CELGENE'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

Chicago Mun. Code Ch. 1-22-030(b) ....................................................... 19

Chicago Mun. Code Ch. 1-22-040(b)(1) .................................................. 22

Colo. Rev. Stat. Ann. § 25.5-4-306(2) ............................................... 19, 21

Col. Rev. Stat. § 25.5-4-307(1) ............................................................... 22

Conn. Gen. Stat. Ann. § 17b-301d(b) ................................................ 19, 22

D.C. Code § 2-381.03(b)(2), (3) .............................................................. 19

D.C. Code § 2-381.05(a) .......................................................................... 22

Fla. Stat. § 68.083(3), (5) ........................................................................ 19

Fla. Stat. § 68.089(1) ............................................................................... 22

Ga. Code Ann. § 49-4-168.2(c)(1), (2) .................................................... 19

Ga. Code Ann. § 49-4-168.5 .................................................................... 22

Haw. Rev. Stat. § 661-24 ......................................................................... 22

Haw. Rev. Stat. § 661-25(b)-(c) .............................................................. 19

Ind. Code § 5-11-5.5-4(c), (d) ................................................................. 19

Ind. Code § 5-11-5.5-9(b)(1) ................................................................... 22

La. Rev. Stat. Ann. § 46:439.1(B) ........................................................... 22

La. Rev. Stat. Ann. § 46:439.2(a)(2), (4) ................................................ 19

Mass. Gen. Laws ch. 12 § 5C(3) ............................................................. 19

Mass. Gen. Laws ch. 12 § 5K(1) ............................................................. 22

Md. Code Ann. § 2-604(a)(8) ................................................................... 21

Md. Code Ann. Health-Gen § 2-604(a)(3), (4) ....................................... 19

Mich. Comp. Laws § 400.610a(2), (3) .................................................... 19

Mich. Comp. Laws Ann. § 400.614(1)(a) ............................................... 22

Minn. Stat. § 15C.01 ................................................................................ 19

1

Minn. Stat. § 15C.05 ........................................................................ 19, 21

2

Minn. Stat. § 15C.11(a) ........................................................................... 22

3

Mont. Code Ann. § 17-8-404(1)(a) ........................................................ 22

4

5

Mont. Code Ann. § 17-8-406(2), (3) ...................................................... 19

6

N.C. Gen. Stat. Ann. § 1-608(b)(2), (3) ................................................ 19

7

N.C. Gen. Stat. Ann. § 1-615(a) ............................................................ 22

8

N.H. Rev. Stat. Ann. § 167:61-b(VII)(a) .............................................. 22

9

N.H. Rev. Stat. § 167:61-c(II) ............................................................... 19

10

11

N.J. Stat. Ann. § 2A:32C-5(c), (d) ........................................................ 19

12

N.J. Stat. Ann. § 2A:32C-11 ................................................................. 22

13

N.M. Stat. § 27-14-7 ........................................................................ 19, 21

14

N.M. Stat. § 37-1-4 ............................................................................... 22

15

Nev. Rev. Stat. Ann. § 357.080(4), (5) ................................................. 19

16

Nev. Rev. Stat. § 357.170(1) ................................................................. 22

17

18

N.Y. CLS St. Fin. § 192.1 ..................................................................... 23

19

N.Y. St. Fin. § 190(2)(b) ....................................................................... 19

20

Rev. Code Wash. § 48.80 ...................................................................... 22

21

Rev. Code Wash. § 74.66.050(2), (3) .................................................... 19

22

R.I. Gen. Laws § 9-1.1-4(b)(2), (3) ....................................................... 19

23

R.I. Gen. Laws § 9-1.1-5(b)(1) .............................................................. 22

24

25

Tenn. Code Ann. § 71-5-183(b)(2), (3) ................................................. 19

26

Tenn. Code Ann. § 71-5-184(b)(1) ........................................................ 22

27

Tex. Civ. Prac. & Remedies Code § 16.051 .......................................... 22

28

Tex. Hum. Res. Code Ann. § 36.102(a), (b) .......................................... 19

Va. Code Ann. § 8.01-216.5(b), (c) ................................................................19

Va. Code Ann. § 8.01-216.9 ............................................................................22

Wis. Stat. Ann. § 20.931(5)(b), (c) ..................................................................19

Wis. Stat. § 20.931(15) ...................................................................................23

Wis. Stat. § 893.981 .......................................................................................23

**OTHER AUTHORITIES**

42 C.F.R. § 411.351 ........................................................................................14

42 C.F.R. § 423.153(b) ...................................................................................11

66 Fed. Reg. 856,872 (Jan. 4, 2001) ..............................................................14

66 Fed. Reg. 856,920 (Jan. 4, 2001) ..............................................................14

66 Fed. Reg. 856,934-35 (Jan. 4, 2001) .........................................................14

69 Fed. Reg. 38,898 (June 29, 2004) ..............................................................10

69 Fed. Reg. 38,899 (June 29, 2004) ..............................................................10

A. List et al., *Efficacy of Lenalidomide in Myelodysplastic Syndromes*,
    352 N. Engl. J. Med. 549 (2005) .............................................................11

Fed. R. Civ. P. 8(a) ..........................................................................................1

Fed. R. Civ. P. 9(b) ..........................................................................................1

Fed. R. Civ. P. 12(b)(6) .................................................................................1, 4

J.B. Bartlett et al., *Recent clinical studies of the immunomodulatory drug
    (IMiD®) lenalidomide,* 93 Brit. J. Cancer 613 (2005) .........................11

*Medicare Benefit Policy Manual* ch. 15, § 50.4.5, *available at* http://www.
    cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/...........9, 10

*Medicare Prescription Drug Benefit Manual* ch. 6, § 10.6....................................11

Tex. Acts 2007, 80th Leg., ch. 29, § 6(a) ..............................................................21

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This is a False Claims Act ("FCA") case concerning two life-extending drugs, Thalomid® and Revlimid®, that physicians across the country prescribe to treat some of their most seriously ill cancer patients. Although Relator Beverly Brown ("Brown") spends the vast majority of her Third Amended Complaint ("Complaint") alleging that Celgene Corporation ("Celgene") promoted these FDA-approved drugs for off-label uses, off-label promotion alone is insufficient—*as a matter of law*—to establish liability under the FCA or its state analogs. Instead, Brown must allege sufficient and plausible facts to show that Celgene knowingly *caused materially false claims* to be submitted to the government for charges *not properly reimbursable* under government programs. Brown's conclusory allegations do not, and cannot, satisfy that burden.

The Complaint is devoid of allegations specifying what purportedly false claims for reimbursement were submitted to the government, how they were false, or even who submitted them. Moreover, whether a claim for off-label drug use is reimbursable turns *not* on how the drug was promoted, but on whether its off-label use was "medically accepted." Here, Brown fails to address or acknowledge that many of the off-label uses at issue were medically accepted and therefore *required to be reimbursed* by the government. Nor does Brown adequately or plausibly allege facts indicating that physicians prescribed these drugs (resulting in the submission of claims to the government) simply because Celgene improperly promoted them—and not based on their independent medical judgment and training, the available medical literature, and the needs of their patients. As a result of these deficiencies, Brown cannot state a claim with the plausibility required by Rules 8(a) and 12(b)(6), much less the particularity required in FCA cases by Rule 9(b).

In addition, large classes of Brown's FCA and state law claims should also be dismissed because they are time-barred or otherwise deficient as a matter of law. In the event that Brown's Complaint is not dismissed in its entirety, it should, at a minimum, be substantially narrowed as set forth below.

## STATEMENT OF THE CASE

### A.   Thalomid® (thalidomide)

At the heart of this case is the drug Thalomid® (also known by its generic name thalidomide).  In the late 1950s and early 1960s, decades before Celgene existed, thalidomide was used outside the United States as an anti-nausea medication for pregnant women.  Later, it was discovered that thalidomide caused birth defects when taken during pregnancy, and most countries subsequently banned its use.

At the United States government's urging, Celgene brought Thalomid® to market in the United States in 1998.  *See* Third Amended Complaint ("Compl.") ¶5.  The FDA initially approved Thalomid® to treat erythema nodosum leprosum, a leprosy complication that results in painful skin lesions, while recognizing that the drug would have additional uses.  *See id.* ¶¶5, 6; *see also* Request for Judicial Notice ("RJN") Ex. 17 (1998 FDA-approved labeling for Thalomid®).  In light of the known risk of birth defects, the FDA required Celgene to implement a stringent program to govern the distribution of Thalomid® for any use, whether approved by the FDA or not.  *See* Compl. ¶¶91, 92.  This first-of-its-kind program—then known as the System for Thalidomide Education and Prescribing Safety (S.T.E.P.S.®) and now known as Thalomid REMS®—imposes mandatory requirements on patients, physicians, and pharmacists before Thalomid® is prescribed and dispensed.  *See* RJN Ex. 26 (initial REMS approval Aug. 2010); *id.* Ex. 17 (1998 Thalomid® labeling).  Physicians who wish to prescribe Thalomid® to their patients must undertake a series of steps to comply with this program well beyond what would be necessary to prescribe a different medication.  *See* RJN Exs. 17, 26.

Because Thalomid® has anti-angiogenic and immunomodulatory properties (meaning it inhibits new blood vessel growth and can alter immune responses), physicians and scientists recognized—as early as 1998—Thalomid's® effectiveness for treating various forms of multiple myeloma ("MM"), a plasma cell cancer, as well as other cancers and diseases for which there were few, if any, FDA-approved

treatments at the time.  *See* Compl. ¶197 (listing numerous scientific journals recognizing Thalomid's® effectiveness with respect to various forms of cancer).  The FDA approved Thalomid® for MM in May 2006 in combination with another drug, dexamethasone.  *Id.* ¶11.

### B.   Revlimid® (lenalidomide)

Celgene developed Revlimid® (generic name lenalidomide) and brought it to market in 2005, when it was approved by the FDA for a progressive bone marrow disorder known as myelodysplastic syndrome ("MDS") with chromosome 5q deletion. *See id.* ¶9.  As with Thalomid®, the FDA imposed a program to restrict access to Revlimid®, known first as RevAssist® and now as Revlimid REMS®, similar to the S.T.E.P.S.® program.  *See id.* ¶¶93-94.  In June 2006, Revlimid®, in combination with dexamethasone, was approved for MM in patients who have received at least one prior therapy.  *Id.* ¶12.  In June 2013, the FDA approved Revlimid® for mantle cell lymphoma ("MCL") in certain patients who have received two prior therapies, one of which included bortezomib.  *See* RJN Ex. 18 (FDA-approved labeling for Revlimid®). As with Thalomid®, physicians and scientists have recognized Revlimid's® efficacy in treating other cancers and diseases, including newly-diagnosed MM.  *See* Appendix A.

### C.   Reimbursement for Off-Label Prescriptions

To keep up with rapid medical advances, physicians may prescribe FDA-approved drugs such as Thalomid® and Revlimid® for any legitimate medical purpose—not just those uses approved by the FDA.  *See* Compl. ¶45.  Such "off-label" uses are both legitimate and widespread, particularly in oncology, and reflect physicians' independent medical judgment regarding the efficacy and appropriateness of drugs for particular patients.

For the same reasons, government programs like Medicare and Medicaid require reimbursement for all "medically accepted indication[s]," not just those approved by the FDA, so patients can receive the best possible care.  Compl. ¶55; *see* 42 U.S.C. §§ 1395w-102(e), 1395x(t)(2) (Medicare); *id.* § 1396r-8(d)(1), (k)(6)

(Medicaid).  "Medically accepted indications" include off-label uses supported by government-designated drug compendia (privately-owned indices that include information about a drug's properties and current uses) or recognized peer-reviewed medical literature.  Compl. ¶¶55-60; 42 U.S.C. §§ 1395w-102(e)(4)(A), 1395x(t)(2)(B)(ii) (Medicare); *id.* § 1396r-8(g)(1)(B), (k)(6) (Medicaid).

### D.    Brown's Complaints

On April 27, 2010, Brown filed a complaint against Celgene alleging violations of the FCA and various state false claims statutes.  Brown amended the complaint on May 3, 2013, to add claims under additional state false claims laws, and again on November 6, 2013 (after the federal government declined to intervene), to add a California Insurance Fraud Prevention Act ("IFPA") claim.  On February 5, 2014, Brown filed the operative Third Amended Complaint ("Complaint").

Brown alleges that Celgene is liable under these statutes because it promoted Thalomid® and Revlimid® to physicians for non-reimbursable off-label uses.  Brown's theory rests on the notion that physicians prescribed these drugs to terminally ill cancer and other patients based on Celgene's allegedly improper off-label promotion, as opposed to the physicians' medical training and judgment, the clinical data, and the needs of their patients.  Brown then suggests that the prescriptions written by physicians somehow led to false requests for payment under government programs including Medicare, Medicaid, TRICARE, and the Veterans Administration ("VA").  Brown also alleges that Celgene, in violation of the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b), and the Stark Law, § 1395nn *et seq.*, improperly induced some physicians to prescribe and otherwise recommend Thalomid® and Revlimid® by paying them to speak at Celgene-sponsored events, and asserts that this alleged conduct resulted in false claims to government programs.

### **LEGAL STANDARD**

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks "sufficient facts to support a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d

953, 959 (9th Cir. 2013).  Because "the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), the complaint's factual allegations must rise above "the mere possibility" of liability, *id.* at 679, and a court can disregard allegations contradicted by materials incorporated into the complaint or subject to judicial notice.  *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

The FCA is not a catchall statute intended to punish general misconduct but, instead, "focuses on the submission of a [false] claim" to the government.  *U.S. ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002).  To state a claim under the FCA, Brown must adequately allege four independent elements: (1) that a claim for payment was false, (2) the falsity was material, (3) Celgene caused the submission of the false claim, and (4) Celgene did so with the necessary scienter.  *See U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006).  Because the FCA sounds in fraud, the facts surrounding the "who, what, when, where, and how" of the alleged fraud, and how that supposed fraud caused allegedly false claims, must be pled with particularity.  *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (affirming dismissal of 733-page FCA complaint).  Allegations that identify a "general sort of fraudulent conduct but specif[y] no particular circumstances of any discrete fraudulent statement, [are] precisely what Rule 9(b) aims to preclude."  *Id.* at 1057.

## **ARGUMENT**

## I.   **BROWN FAILS TO PLEAD THE ELEMENTS OF AN FCA CLAIM.**

The Complaint should be dismissed because it fails to allege facts establishing the critical elements of material falsity and causation.

### A.   **Brown's Allegations Fail to Establish That Any Claim Was Materially False or Fraudulent.**

Because FCA liability turns on a "'claim for payment,'" Brown must sufficiently allege how a claim for payment was :either fraudulent or simply false."

*U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).  For purposes of the FCA, the phrase "fraudulent or false" encompasses both factually and legally false claims.  *Id.*  A claim is factually false when the claimant misrepresents what goods or services it provided to the government.  *Id.*  Alternatively, a claim can be legally false when the claimant knowingly makes an express or implied false certification of compliance with underlying statutes or regulations, and compliance with the particular statutes or regulations was a condition of payment.  *Id.*; *accord Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 995-96 (9th Cir. 2010); *Hendow*, 461 F.3d at 1171.  Under either theory, the alleged falsity must be material, meaning that it must have the "potential effect" of influencing the government's payment decision.  *United States v. Bourseau*, 531 F.3d 1159, 1170-71 (9th Cir. 2008); see also 31 U.S.C. § 3729(b)(4) (2009) ("the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.").

Brown alleges that Celgene's alleged off-label promotion somehow rendered reimbursement claims for Thalomid® and Revlimid® to be legally false.  But as discussed below, her Complaint fails to allege a *single* express or implied certification of compliance, as required to allege a legally false claim.  Nor does she allege sufficient facts establishing that any claims for payment were not reimbursable.  In fact, numerous classes of her alleged claims were reimbursable and should therefore be dismissed.  Finally, Brown's offhand allegations of kickback violations and factually false claims are insufficiently pled to survive dismissal.

### 1.    The Complaint Fails to Allege Any Express or Implied False Certification by an Entity Seeking Payment.

The Complaint should be dismissed because it fails to allege any express or implied false certification of compliance.  To plead an express certification, a relator must allege that "the entity seeking payment certifie[d] compliance with a law, rule or regulation as part of the process through which the claim for payment [was] submitted."  *See Ebeid*, 616 F.3d at 996-98.  Brown nowhere alleges that any "entity

seeking payment" made express compliance representations in conjunction with the submission of reimbursement claims for Thalomid® or Revlimid®. *Id.* at 998.

Nor does the Complaint allege any implied certification. Implied certification "occurs when an entity has *previously undertaken* to *expressly comply* with a law, rule, or regulation," *id.* (emphases added), such that the later "submission of a claim for payment acts as an implicit reaffirmation of compliance." *U.S. ex rel. Capriola v. Brightstar Educ. Grp., Inc.*, No. 1:11-CV-00135, 2013 WL 1499319, at *4 (E.D. Cal. Apr. 11, 2013). To plead an implied certification (as with an express certification), a relator must also allege that compliance with that law, rule, or regulation was a prerequisite to obtaining payment. *Ebeid*, 616 F.3d at 998; *see also id.* at 997. Here, Brown does not allege who, if anyone, previously undertook to comply expressly with a legal requirement or what that undertaking provided. Indeed, her Complaint never once refers to a certification, or even uses the word "certify."

The Complaint does no better in explaining what legal requirement was violated here. Off-label promotion by manufacturers does not violate any "condition of payment." *See U.S. ex rel. Simpson v. Bayer Corp.*, No. 05-3895 (JLL) (JAD), 2014 U.S. Dist. LEXIS 51342, at *15-27 (D.N.J. Apr. 11, 2014) (granting motion to dismiss FCA claims predicated on off-label promotion); *see generally* 21 U.S.C. § 301 *et seq.*; 42 U.S.C. § 1395w-101 *et seq.*; *id.* § 1396 *et seq.* Accordingly, courts have recognized that allegations of improper promotion alone do not suffice to plead liability under the FCA based on false implied certifications. *See, e.g.*, *U.S. ex rel. Wilkins v. United Health Grp.*, 659 F.3d 295, 311 (3d Cir. 2011) ("compliance with the Medicare [Advantage program] marketing regulations is not a condition for Government payment under the federal health insurance programs"); *Simpson*, 2014 U.S. Dist. LEXIS 51342, at *15-27 (misleading and off-label promotion, without more, does not violate a "condition of payment"); *cf. U.S. ex rel. Rostholder v. Omnicare, Inc.*, __ F.3d __, No. 12-2431, 2014 U.S. App. LEXIS 3269, at *16 (4th Cir. Feb. 21, 2014) ("compliance with [manufacturing requirements] is not required

for payment by Medicare and Medicaid").  Against this established legal authority, Brown's conclusory assertion that the government would not knowingly pay for prescriptions resulting from false or unlawful off-label marketing, Compl. ¶¶18, 41, 208-210, cannot save her Complaint from dismissal.

Because Brown has not identified a false certification, and off-label promotion does not violate a condition of payment, her FCA claims fail as a matter of law.

### 2. Brown Fails to Adequately or Plausibly Allege That the Off-Label Uses at Issue Were Not Medically Accepted.

To allege falsity, Brown must also allege facts establishing that any claims submitted as a result of Celgene's conduct were not reimbursable.  Brown does not, and indeed cannot, do so.  *See, e.g.*, *Simpson*, 2014 U.S. Dist. LEXIS 51342, at *27-30 (dismissing FCA claims concerning off-label marketing); *U.S. ex rel. King v. Solvay*, 823 F. Supp. 2d 472, 510 (S.D. Tex. 2011) (vacated in part on other grounds).

As Brown acknowledges, reimbursement decisions depend not on whether a drug is prescribed for an off-label use, but rather on whether a use is "*medically accepted*."  Compl. ¶55.  An off-label use is "medically accepted," and government healthcare programs are required to provide reimbursement, if the use is supported by any of the government-designated compendia or peer-reviewed medical literature.  *See* Compl. ¶¶55-60; 42 U.S.C. §§ 1395w-102(e)(4)(A), 1395x(t)(2)(B) (Medicare); *id.* § 1396r-8(g)(1)(B), (k)(6) (Medicaid).  Brown recognizes the same is true of other government reimbursement programs that form part of her Complaint.  Compl. ¶61.

While Brown conclusorily asserts that "the compendia do not provide support" for any of the off-label uses for which Thalomid® and Revlimid® were allegedly promoted, *id.* ¶63, that blanket assertion is not remotely plausible, as it is directly contradicted by the very compendia Brown references in her Complaint.  *See Iqbal*, 556 U.S. at 678 (implausible allegations are insufficient under Rule 8); *Simpson*, 2014 U.S. Dist. LEXIS 51342, at *31-35 (declining to accept conclusory allegations that compendia did not support off-label uses).  Those compendia indisputably support

numerous off-label indications identified in the Complaint, including brain cancer, lymphoma, melanoma, leukemia, and MM not in combination with dexamethasone. *See* Appendix A.[1]  In the face of these incontestable facts, Brown's blanket assertion of "no support" is hardly adequate in providing basic notice as to which off-label uses purportedly are not supported, which compendia fail to provide this support, and which claims for payment are affected.

In *U.S. ex rel. Simpson v. Bayer Corp.*, the court rejected allegations that laid out in considerably greater detail than here why the compendia did not support off-label uses of the drug Trasylol.  Granting the defendant's motion to dismiss, the court held that the complaint did not "plausibly allege that the off-label uses [at issue] lacked medical acceptance" and left the court "[u]nab[le] to reasonably infer from the Complaint which particular off-label uses [were] unsupported."  2014 U.S. Dist. LEXIS 51342, at *33-34.  So too here.  Brown's allegations are demonstrably implausible, and she provides no basis to infer which off-label uses were unsupported. This Court should dismiss the Complaint.

### 3. Alternatively, this Court Should Dismiss Those Claims that Cannot Give Rise to FCA Liability as a Matter of Law.

In the alternative to dismissing the entire Complaint, this Court should, at a minimum, dismiss those classes of Brown's claims that, for independent reasons, do not and cannot establish material falsity as a matter of law.

*First*, this Court should follow the weight of authority and dismiss those

---

[1] The Centers for Medicare and Medicaid Services (CMS) has published the *Medicare Benefit Policy Manual* that explains how to determine whether compendia support an off-label use.  Courts regularly consider the manual when ruling on dispositive motions.  *See Strom ex rel. U.S. v. Scios, Inc.*, 676 F. Supp. 2d 884, 886 (N.D. Cal. 2009) (citing manual); *U.S. ex rel. Worsfold v. Pfizer Inc.*, No. 09-11522, 2013 WL 6195790, at *4 (D. Mass. Nov. 22, 2013) (same).  For the Drug Dex compendium, a use is medically accepted if it is categorized as Class I, IIa or IIb.  *See Medicare Benefit Policy Manual* ch.15, §50.4.5 (RJN Ex. 19), *available at* http://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/bp102c15.pdf.  The applicable Class and Category ratings for DrugDex appear within the "Overview" portion of Section 4.5 of each compendia.  Although this motion relies only on the DrugDex compendium, other compendia supported additional off-label uses of Thalomid® and Revlimid®.

particular claims based on off-label uses that fall within a Class of the compendia that renders them medically accepted as a matter of law.  *See, e.g.*, *U.S. ex rel. McDermott v. Genentech*, No. 05-147-P-C, 2006 WL 3741920, at *13 (D. Me. Dec. 14, 2006) (taking judicial notice of DrugDex compendium and ruling off-label uses supported); *Solvay*, 823 F. Supp. at 511 ("If an off-label use is supported by DRUGDEX or another approved compendia, then it is a 'medically accepted indication,' and claims for payment of medically accepted indications are not false claims."); *U.S. ex rel. Petratos v. Genetech, Inc.*, No. 11-3691, 2014 WL 345322, at *3 (D.N.J. Jan. 30, 2014) (same); *U.S. ex rel. Booker v. Pfizer, Inc.*, No. 10-11166, 2014 WL 1271766, *15 (D. Mass. Mar. 26, 2014) (same).  Those specifically identified, medically accepted uses are listed in Appendix A.

*Second*, Brown cannot establish the material falsity of any claims based on Thalomid® prescriptions for MM between September 2004 and December 2005.  In September 2004, Medicare launched a 15-month "demonstration project" in which it identified certain drugs deemed sufficiently effective for certain off-label uses and therefore reimbursable, regardless their status in compendia.  *See* 69 Fed. Reg. 38,898, 38,899 (June 29, 2004).  Use of Thalomid® for MM was *expressly covered*. *Id.*  Accordingly, any off-label marketing that led to claims involving Thalomid® for MM from September 2004 through December 2005 could not have been false.

*Third*, since January 1, 2009, Medicare has treated off-label anticancer indications as "medically accepted," even if not supported by compendia, when those uses are supported by clinical evidence in specified "peer reviewed medical literature." 42 U.S.C. §§ 1395w-102(e)(4)(A)(i), 1395x(t)(2)(B)(ii)(II); *Medicare Benefit Policy Manual* ch. 15, § 50.4.5 (RJN Ex. 19).  Brown nowhere asserts that alleged off-label uses of Thalomid® and Revlimid® lacked support in such literature.  As a result, her allegations cannot establish that any claims based on prescriptions since 2009 for anticancer treatments were materially false, and those claims should be dismissed.

*See Simpson*, 2014 U.S. Dist. LEXIS 51342, at *13.[2]

*Fourth*, Brown cannot pursue claims reimbursed by health plans that imposed "prior authorization" requirements, under which claims for Thalomid® and Revlimid® would not have been reimbursed until after information was received about the off-label use the product was prescribed to treat. *See generally* 42 U.S.C. § 1396r-8(d)(1)(A) (permitting prior authorization in state Medicaid programs); *see, e.g.*, RJN Exs. 22 & 23 (Washington State Medicaid – requiring prior authorization for Revlimid® and Thalomid®); *see also* 42 U.S.C. § 1395w-104(c); 42 C.F.R. § 423.153(b) (authorizing utilization management techniques, like prior authorization, for Medicare plans); *Medicare Prescription Drug Benefit Manual* ch. 6, §§ 10.6, 10.6.1.[3]  For these claims, the plan would have been provided with the information necessary to assess eligibility, and "[i]t cannot be an actionable violation of the FCA for an individual to provide truthful information to the government, in order to allow the government to determine whether or not that information establishes eligibility for a certain program."  *McDermott*, 2006 WL 3741920, at *13 (internal quotation marks omitted) (alteration in original).  Insofar as Medicare and Medicaid reimbursed for off-label uses after disclosure of those uses, such claims cannot be deemed false or material as a matter of law, even under Brown's theory of FCA liability.  Accordingly, claims under Medicare Part D and Medicaid plans that employ such prior disclosure requirements should be dismissed.

*Finally*, under Medicaid, states have discretion to reimburse "covered"

---

[2] In fact, the specified medical literature supported numerous off-label indications for Thalomid® and Revlimid®.  *See, e.g.*, J.B. Bartlett et al., *Recent clinical studies of the immunomodulatory drug (IMiD®) lenalidomide*, 93 Brit. J. Cancer 613 (2005) (RJN Ex. 25) (discussing past studies supporting use of Thalomid® and Revlimid® for, *inter alia*, first-line and second-line treatment of MM); A. List et al., *Efficacy of Lenalidomide in Myelodysplastic Syndromes*, 352 N. Engl. J. Med. 549 (2005) (RJN Ex. 26) (supporting use of Revlimid to treat MDS with or without a 5q deletion).

[3] According to CMS' Medicare Plan Finder, of the 34 PDPs available in the Court's zip code (90012), 22 required prior authorization for Revlimid® and 30 required prior authorization for Thalomid®.  *See* RJN Ex. 21 (results from database search).

outpatient drugs regardless of whether the drug is administered for a medically accepted use.  *See* 42 U.S.C. § 1396r-8(d)(1)(B)(i) (according states with discretion over whether to "exclude or otherwise restrict coverage of a covered outpatient drug if the prescribed use is not for a medically accepted indication"); *U.S. ex rel. Banignan v. Organon USA Inc.*, 883 F. Supp. 2d 277, 295 (D. Mass. 2012) (describing states' discretion to "choose whether they will cover off-label, non-compendium prescriptions").  Because Brown does not allege that any state declined to exercise its discretion to treat Thalomid® and Revlimid® as covered drugs, she cannot show that claims paid by Medicaid were materially false.  *See U.S. ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001) (an FCA complaint must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud" (internal quotation marks omitted)).  These claims should be dismissed.  *See Banignan*, 883 F. Supp. 3d at 295 (dismissing off-label FCA claims where relator failed to allege that states refused discretionary coverage).

### 4.    Brown Cannot Establish Material Falsity Under the AKS or Stark Law.

In addition to her off-label marketing claims, Brown asserts an undefined subset of FCA claims based on alleged violations of the AKS or Stark Law.  She contends that compliance with these statutes is a prerequisite to reimbursement, making requests for reimbursement that arise from alleged AKS or Stark Law violations materially false under the FCA.  *See* Compl. ¶¶17, 71, 235-49.  Brown, however, fails to allege facts sufficient (1) to establish that compliance was a prerequisite for payment or (2) to make out a predicate AKS or Stark Law violation.

For claims prior to May 23, 2010, Brown cannot use the AKS as a predicate for FCA claims because AKS compliance was not a condition of payment during this time period.  In *Ebeid*, the Ninth Circuit explained that a court must "look to the specific text of [a] regulation" to determine whether that regulation is a payment condition, 616 F.3d at 1001, and that a relator accordingly must allege the specific

"statute, rule, regulation, or contract" that provides this textual condition, *id.* at 1000. *Cf. U.S. ex rel. Mikes v. Straus*, 274 F.3d 687, 700 (2d Cir. 2001) (explaining that a statutory violation renders a claim false "only when the underlying statute . . . upon which the plaintiff relies *expressly* states the provider must comply in order to be paid").[4]  Prior to May 23, 2010, the AKS contained no such requirement, and Brown fails to identify any other statute making AKS compliance a condition of payment. *See, e.g., U.S. ex rel. Kennedy v. Aventis Pharm., Inc.*, 610 F. Supp. 2d 938, 946 (N.D. Ill. 2009) (AKS does not expressly require compliance as a payment condition).

Furthermore, although the AKS was amended on March 23, 2010, to provide that an AKS violation renders "a claim that includes items or services resulting from [an AKS] violation" false, 42 U.S.C. § 1320a-7b(g), Brown has not alleged that any claim after March 23, 2010, actually "result[ed] from" an AKS violation.[5]  *See generally* Compl. ¶¶235-49.  Brown asserts that Celgene's "payments to physicians" were "intended" to "induce them to write additional prescriptions for Celgene's products," and to influence the broader "market" for "medical information."  Compl. ¶¶248-49.  But because she fails to allege that these payments *actually* induced any prescriptions, she does not and cannot show that any false claims to the government "result[ed] from" such payments.  42 U.S.C. § 1320a-7b(g).[6]

Similarly, Brown cannot predicate an implied certification claim on the Stark

---

[4] The Ninth Circuit has not yet decided whether to follow the Second Circuit and limit implied certification FCA claims solely to instances where a statute or regulation explicitly conditions payment on compliance. *Ebeid*, 616 F.3d at 998 n.3.  The Ninth Circuit nonetheless has held that a relator must identify the actual text of the legal provision that allegedly makes a claim impliedly false due to regulatory noncompliance. *Id.* at 1000-01.

[5] The amendment is not retroactive. *See Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson,* 559 U.S. 280, 283 n.1 (2010).

[6] Although Brown alleges that a "Dr. Robert Vescic began writing substantially more prescriptions for Thalomid after Celgene began paying him to speak," Compl. ¶246, these prescriptions occurred before the May 2010 AKS amendments.  *See* Compl. ¶¶201-203 (suggesting that Dr. Vescic spoke on Celgene's behalf no later than 2004).

Law.  The Stark Law prohibits a physician from referring Medicare patients to an entity that furnishes designated health services ("DHS") if the physician has a financial relationship with the entity, unless an exception applies.  42 U.S.C. § 1395nn(a)(1)(A); *Council for Urological Interests v. Sebelius*, 946 F. Supp. 2d 91, 98 (D.D.C. 2013) (noting that Stark Law prohibits referrals to "the entity" with which a physician has a financial relationship).  The facts alleged in the Complaint do not make out a Stark Law violation because Celgene is not an entity that furnishes DHS. An entity is considered to furnish DHS if it either "has performed services that are billed as DHS" or it presents claims to Medicare for the DHS.  *See* 42 C.F.R. § 411.351 (defining "entity").  Here, Celgene does not perform services that are billed as DHS, nor does it directly bill or submit claims for reimbursement to Medicare for DHS.  *See id.* (relevant "entity" "performed services that are billed" or "presented a claim to Medicare"); *see also* 66 Fed. Reg. 856,872, 920, 934-35 (Jan. 4, 2001) ("These financial relationships would not be subject to section 1877 of the Act unless the manufacturer were an entity that bills Medicare directly.").  In sum, Brown cannot use the AKS or the Stark Law to manufacture an implied false claim for reimbursement, and all FCA claims predicated on these statutes should be dismissed.

### 5.    Brown Has Not Adequately Alleged Factual Falsity.

Brown cannot remedy the deficiencies in her theory of legal falsity by alleging that Celgene caused pharmacists to submit factually false claims.  Although Brown suggests that Celgene somehow may have caused ICD-9 codes for Revlimid[®] claims to be altered to make off-label prescriptions appear to be on-label, Compl. ¶¶222-34, she fails to allege how this conduct affected any governmental payment decision.  In fact, a change in classification *could not* have resulted in a false claim if the off-label use was medically accepted (*i.e.*, under compendia or medical literature) and would have been paid regardless—issues that Brown simply fails to acknowledge or address.

### B.    Brown Does Not Adequately or Plausibly Allege Causation.

Brown's FCA claims also fail because she does not adequately allege facts

establishing that it was Celgene's allegedly improper off-label promotion, and not physicians' independent medical judgment and training, that caused them to prescribe Thalomid® and Revlimid® for off-label uses.  As in tort law, causation under the FCA requires both actual cause ("cause in fact") and proximate cause ("legal cause").  *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 244 (3d Cir. 2004) (noting FCA causation analyzed under "ordinary causation principles from negligence law").  Brown has not alleged the facts necessary to establish either.

As courts have recognized in dismissing cases similar to this one, "physicians are not unsophisticated lay persons."  *U.S. ex rel. Nathan v. Takeda Pharms.*, No. 09-cv-1086 (AJT), 2011 WL 3911095, at *5 (E.D. Va. Sept. 6, 2011), *aff'd on other grounds*, 707 F.3d 451 (4th Cir. 2013).  Rather, there is a strong, natural "likelihood that physicians would rely on" independent studies and data, not off-label promotion, when "choosing to prescribe" a drug.  *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704 (ERK), 2009 WL 1456582, at *9-10 (E.D.N.Y. May 22, 2009) (dismissing FCA complaint).  Thus, doctors "are *presumed* to go beyond advertising medium and use their independent knowledge in making medical decisions."[7]  *Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1280-81 (S.D. Fla. 2009) (emphasis added) (rejecting proximate cause on pleadings in RICO action); *accord UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 135 (2d Cir. 2010).

Those conclusions are underscored by the factual allegations in Brown's Complaint.  Every time Brown discusses physicians' specific reactions to alleged off-

---

[7] In part to protect this independent decision-making, courts have recognized that "speech promoting the lawful, off-label use of an FDA-approved drug" is commercial speech protected by the First Amendment.  *United States v. Caronia*, 703 F.3d 149, 169 (2d Cir. 2012); *see also Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653, 2670 (2011) (same).  Such speech thus cannot be the basis for FCA liability.  Accordingly, Brown cannot allege simply that Celgene engaged in off-label marketing; at a very minimum, she must allege—and ultimately prove—that such marketing was false and misleading.  *See, e.g.*, *Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) (explaining that a "statute must be construed, if fairly possible, so as to avoid" any "grave doubts" about constitutionality); *United States v. Shill*, 740 F.3d 1347, 1355 (9th Cir. 2014).

label marketing, she emphasizes that the physicians *rejected* those marketing efforts. *See, e.g.*, Compl. ¶159 (two physicians independently *refusing* Brown's Revlimid® marketing attempts); *id.* ¶¶162 (physician "harshly scolded Relator for attempting to market Thalomid based on a woefully inadequate study."); *id.* ¶191 ("Dr. Devitt *objected* to [a Celgene representative's] efforts to" prescribe higher doses); *id.* ¶190 ("Relator and other representatives often encountered resistance from physicians"); *id.* ¶216 ("Doctors were often reluctant to switch MM patients . . . to Revlimid"); *id.* ¶255 ("difficulties persuading VA physicians to prescribe Thalomid for MM").

While the Complaint makes conclusory assertions that non-receptive physicians "were the exception," *id.* ¶159, Brown provides no elaboration, much less any examples of the purported "norm." Such vague assertions are insufficient to allege causation, under Rule 12(b)(6) and certainly under Rule 9(b). *See, e.g.*, *Felarca v. Birgeneau*, No. 11-CV-5719 YGR, 2014 WL 206762, at *3 (N.D. Cal. Jan. 17, 2014) ("General allegations are 'not entitled to the assumption of truth' unless they are backed by sufficiently specific factual allegations." (quoting *Iqbal*, 556 U.S. at 679)); *U.S. ex rel. Lampkin v. Johnson & Johnson*, No. 08-05362 (JAP), 2013 WL 2404238 at *5 (D.N.J. May 31, 2013) (rejecting "conclusory" inference of causation and dismissing FCA claim for lack of causation); *Nathan*, 2011 WL 3911095, at *5 (same); *U.S. ex rel. Hess v. Sanofi-Synthelabo Inc.*, No. 4-05CV570 MLM, 2006 WL 1064127, at *8 (E.D. Mo. Apr. 21, 2006) (same).

In spite of her burden to allege facts showing causation, Brown offers not a single example of a physician actually prescribing Thalomid® or Revlimid® directly as a result of Celgene's alleged off-label promotion. Nor does Brown allege facts indicating that physicians would not have prescribed these drugs absent Celgene's alleged conduct. *See Hess*, 2006 WL 1064127, at *7 (to allege actual causation, relator "must plead that but for Defendant's allegedly fraudulent [conduct] the doctors would not have made claims . . . for off-label uses," and " [government payors] would not have reimbursed the doctors."). Instead, the only plausible inference from

16

Brown's own allegations is that physicians who prescribed Thalomid® and Revlimid® did so—as is presumed—based on their independent medical judgment and training, their review of existing clinical data, and the particularized needs of their patients.

## II.   BROWN'S FCA ALLEGATIONS ARE DEFICIENT UNDER RULE 9(b).

The various deficiencies discussed above with respect to false certification, medically accepted use, kickbacks, false representations, and causation are only magnified when viewed through the lens of Rule 9(b)'s particularity requirements, which provide an independent basis for dismissal here.

Because FCA liability turns on "the 'claim for payment,'" *Hopper*, 91 F.3d at 1266, Rule 9(b) requires a relator to allege the "who, what, when, where, and how" of the alleged fraudulent conduct by alleging either "representative examples of false claims to support every allegation," *Ebeid*, 616 F.3d at 998, or to "allege particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted," *U.S. ex rel. Jajdelski v. Kaplan, Inc.*, 517 F. App'x 534, 536 (9th Cir. 2013) (citation omitted); *see also U.S. ex rel. Perry v. Hooker Creek Asphalt & Paving, LLC*, __ F. App'x __, No. 12-35278, 2014 WL 1244276, at *1 (9th Cir. Mar. 27, 2014) (affirming dismissal of complaint that failed to allege coherent scheme, even with representative examples).[8] "Reliable indicia" include particularized details of how false claims were likely submitted to the government by providing, for instance, "dates and descriptions of [false records] and a description of the billing system that the records were likely entered into." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009); *see Ebeid*, 616 F.3d at 998-99 (adopting *Grubbs* standard).

Brown's Complaint does not come close to satisfying these standards. Brown never explains the details of the alleged scheme—*e.g.*, what specific programs were at

---

[8] Although the Complaint fails under every Rule 9(b) standard applied in FCA cases, Celgene submits that Brown should be required to allege representative false claims, as other circuit courts require. *E.g.*, *Nathan*, 707 F.3d at 457-58.

issue, which forms were used to submit allegedly false claims, what false statements or certifications (if any) were made in support of any claim, and who submitted the claims or made the false certifications—or offers any other reliable indicia that *actual* claims for payment were tainted by fraud. *See Driscoll v. Todd Spencer M.D. Med. Group, Inc.*, No. 11-cv-01776-LJO-SMS, 2013 WL 6243858, at *3-6 (E.D. Cal. Dec. 3, 2013) (dismissing FCA complaint for failing to specify "who performed the unnecessary services and who submitted inflated bills," "where the [allegedly] unnecessary services and fraudulent billing occurred," and "how the scheme worked"). Nor does Brown connect her promotion or kickback allegations to actual government payments. These generalized assertions of wrongdoing fail to state a claim for relief, much less provide Celgene with the notice required by Rule 9(b).

When Brown does address claims for government payment, she makes only conclusory allegations that government payors accounted for a large percentage of sales, insinuating that those payments therefore must have resulted from improper marketing and kickback efforts. Compl. ¶¶28, 250-56. Particularly in light of the overarching deficiencies in her Complaint with respect to falsity and causation, these allegations are not "'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend . . . and not just deny that they have done anything wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted); *see also Lee*, 245 F.3d at 1052 (affirming Rule 9(b) FCA dismissal); *Zeman ex rel. U.S. v. USC Univ. Hosp.*, No. CV 11-05755 DPP (MRWx), 2013 WL 603920, at *2 (C.D. Cal. Feb. 19, 2013) ("fact that Plaintiff received a bill . . . does not necessarily establish that the service was covered by Medicare . . . or indicate that the Hospital submitted any claims, let alone false or fraudulent claims, to the [U.S.]").

## III. BROWN'S STATE CLAIMS SHOULD ALSO BE DISMISSED.

### A. The State Claims Fail for the Same Reasons the FCA Claim Fails.

Because Brown's claims under state false claims laws have parallel pleading

requirements to her federal FCA claim, they too should be dismissed under Rules 9(b) and 12(b)(6) for the reasons stated above. *See, e.g., Foglia v. Renal Ventures Mgmt., LLC*, 830 F. Supp. 2d 8, 21-23 (D.N.J. 2011) (dismissing kickback-based state claims for failure to satisfy Rule 9(b)). Brown's state claims for alleged conduct outside of California are particularly deficient, because she fails to allege any connection to or knowledge of activities in those other states. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007); *Foglia*, 830 F. Supp. 2d at 22 (dismissing Texas claim where relator pled only New Jersey facts); *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1277 (N.D. Ga. 2012) (dismissing fifteen state claims where relator alleged only California and Nevada facts).

### B. Brown Fails to Allege Compliance With State Pre-Filing Rules.

To have standing to pursue her state claims, Brown was required to provide information about her false claims and IFPA allegations to specific state government officials or entities on the day or immediate*ly after* she brought those claims (whether in 2010 or, in the case of her later-added Colorado, Minnesota, and Washington claims, 2013).[9] Moreover, claims under state false claims laws generally cannot be unsealed and served until after a state formally declines to intervene. The Complaint fails to allege (and the unsealed docket fails to show) that Brown followed *any* of the

---

[9] *See* Cal. Ins. Code § 1871.7(e)(2); Cal. Gov't Code § 12652(c)(3); Colo. Rev. Stat. Ann. § 25.5-4-306(2)(b); Conn. Gen. Stat. Ann. § 17b-301d(b); 6 Del. Code Ann. § 1203(b)(2); D.C. Code § 2-381.03(b)(2), (3); Fla. Stat. § 68.083(3), (5); Ga. Code Ann. § 49-4-168.2(c)(1), (2); Haw. Rev. Stat. § 661-25(b)-(c); 740 Ill. Comp. Stat. 175/4(b)(2), (3); Ind. Code § 5-11-5.5-4(c), (d); La. Rev. Stat. Ann. § 46:439.2(a)(2), (4); Mass. Gen. Laws ch. 12 § 5C(3); Mich. Comp. Laws § 400.610a(2), (3); Minn. Stat. §§ 15C.01 and 15C.05(d), (e); Mont. Code Ann. § 17-8-406(2), (3); Nev. Rev. Stat. Ann. § 357.080(4), (5); N.H. Rev. Stat. § 167:61-c(II); N.J. Stat. Ann. § 2A:32C-5(c), (d); N.M. Stat. § 27-14-7(C), (D); N.Y. St. Fin. § 190(2)(b); N.C. Gen. Stat. Ann. § 1-608(b)(2), (3); 63 Okla. St. Ann. § 5053.2(b)(2), (3); R.I. Gen. Laws § 9-1.1-4(b)(2), (3); Tenn. Code Ann. § 71-5-183(b)(2), (3); Tex. Hum. Res. Code Ann. § 36.102(a), (b); Va. Code Ann. § 8.01-216.5(b), (c); Rev. Code Wash. § 74.66.050(2), (3); Wis. Stat. Ann. §20.931(5)(b), (c); Chicago Mun. Code Ch. 1-22-030(b). The Maryland claims (Count 13) are also defective, Md. Code Ann. Health-Gen § 2-604(a)(3), (4), but the parties have already stipulated to the dismissal of that count.

---

procedures required to establish standing to pursue her state law claims, separately warranting dismissal.  *See U.S. ex rel. Bogart v. King Pharm.*, 414 F. Supp. 2d 540, 542 (E.D. Pa. 2006); *U.S. ex rel. Fowler v. Caremark RX, Inc.*, No. 03 C 8714, 2006 WL 1519567, at *5 (N.D. Il. May 30, 2006) (dismissing claims in part "because they fail to comply with the *qui tam* provisions of the state false claims acts").  Dismissal should be with prejudice, as Brown may not belatedly comply with these mandatory prerequisites.  *See, e.g.*, *Saldivar*, 906 F. Supp. 2d at 1278.

### C.   Brown Cannot Apply Certain State Statutes Retroactively.

While Brown alleges false claims dating back to 1998, *see* Compl. ¶5, fourteen of the state statutes under which she asserts claims were enacted long after that date and are not retroactive.[10]  *See, e.g.*, *Graham Cnty.*, 559 U.S. at 283 n.1; *see also Solvay*, 823 F. Supp. 2d at 524-33 (concluding that over a dozen state statutes do not apply retroactively).  While the parties have stipulated to the dismissal of a number of these state claims, this Court should additionally dismiss Count Five (Colorado) insofar as it is based on claims prior to the statute's effective date of May 26, 2010, and Count Twenty-Four (North Carolina) insofar as it is based on claims prior to the statute's effective date of January 1, 2010.

### D.   The IFPA, Colorado, Minnesota, New Mexico, Texas, and Washington Claims Fail for Additional, Independent Reasons.

*California (Count 4)*:  Brown's IFPA claim fails because, unlike the FCA, IFPA (which concerns claims submitted to private insurers) does not recognize "false certification" as a theory of liability.  *See State of California ex rel. Wilson v. Bristol Myers Squibb, Inc.*, No. BC367873, at 14 (Cal. Super. Ct. Sept. 12, 2013) (RJN Ex. 27) ("the 'false certification' cases do not appear to apply to fraudulent claims presented to private insurers."); *compare Ebeid*, 616 F.3d at 998 (a "false certification of

---

[10] Statutes apply only prospectively absent express contrary legislative intent.  *See, e.g.*, *E. Enters. v. Apfel*, 524 U.S. 498, 532-33 (1998) (citations omitted).  None of the laws at issue expresses retroactive intent.

compliance . . . creates liability when certification is a prerequisite to obtaining a *government benefit*.'") (internal citations omitted) (emphasis added).

**Colorado (*Count 5*) and Minnesota (*Count 17*)**:  Brown's Colorado and Minnesota claims are barred under the states' respective "first-to-file" provisions, which prohibit an action from being brought based on the facts underlying an action which is already pending.  Colo. Rev. Stat. Ann. § 25.5-4-306(2)(e); Minn. Stat. § 15C.05(b).  Brown did not add these claims to her complaint until May 3, 2013, by which time another relator, David Schmidt, had brought claims under these statutes based on the same material facts.  *See* Fifth Am. Compl. ¶¶ 301-310, 431-440; *U.S. ex rel. Schmidt v. Celgene Corp.*, No. 4:11-cv-00094-RAS-DDB (E.D. Tex. Feb. 8, 2013).  Because Brown's claims were filed while Schmidt's were "pending," they must be dismissed.  *See U.S. ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001) (interpreting materially identical federal provision).[11]

**New Mexico (*Count 22*)**:  Brown's New Mexico claim fails because she is not an "affected person."  N.M. Stat. § 27-14-7(B).  Brown is from California, and it is "hard to fathom how every employee of a nationwide firm could be affected by violations of New Mexico's FCA."  *Solvay*, 823 F. Supp. 2d at 521 (dismissing claim by out-of-state relator).

**Texas (*Count 28*)**:  Texas has permitted relators to bring suit without state intervention only since May 4, 2007, and thus any claims based on conduct prior to that date must be dismissed.[12]

**Washington (*Count 30*)**:  For Count 30, Brown cites Rev. Code Wash.

---

[11] The Maryland Count (Count Thirteen) is barred for the same reasons, *see* Md. Code Ann. § 2-604(a)(8), but the parties have already stipulated to its dismissal on other grounds.

[12] Section 6(a) of Acts 2007, 80th Leg., ch. 29; *U.S. ex rel. Conrad v. Grifols Biologicals Inc.,* No. RDB 07-3176, 2010 WL 2733321, *7 (D. Md. July 9, 2010) (holding amendment not retroactive); *U.S. ex rel. Texas v. Planned Parenthood Gulf Coast*, No. 9:09-cv-00124-RC, 2012 U.S. Dist. LEXIS 189118, at *13 (E.D. Tex. Aug. 10, 2012) (same; dismissing pre-2007 claims).

§ 48.80.010, *et seq.*, which is entitled the Washington Health Care False Claim Act. That Act does not authorize *qui tam* actions. Instead, it provides criminal penalties for false claims to insurance companies. *Id.* §§ 48.80.020(5) & 48.80.030.

## IV.   BROWN'S FEDERAL AND STATE CLAIMS ARE TIME-BARRED.

Assuming *arguendo* that Brown's FCA claims can survive at all, these claims must at a minimum be circumscribed by the statute of limitations. The FCA provides that a suit may not be brought "more than 6 years after the date" false claims were submitted. 31 U.S.C. § 3731(b)(1). Because Brown filed her Complaint on April 27, 2010, any FCA claims prior to April 27, 2004 must be dismissed.[13]

Brown's state FCA claims are likewise subject to limitations periods of 4, 6, or 10 years.[14] And two of the state claims—Colorado and Minnesota—were not added

---

[13] Brown cannot rely on the equitable tolling provision of 31 U.S.C. § 3731(b)(2) to gain a lengthier, 10-year limitations period; for that provision to apply, Brown would have had to file her original complaint within "3 years after the date when facts material to the right of action [were] known or reasonably should have been known." Brown acknowledges that she learned of (and indeed, participated in) Celgene's alleged off-label marketing "immediately" after her April 2001 hiring, yet she waited approximately 9 years before filing suit. *See* Compl. ¶105; *see also U.S. ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1217-18 (9th Cir. 1996) (holding Section 3731(b)(2) inapplicable due to relator's knowledge of alleged wrong). Moreover, although the Ninth Circuit disagrees, *see id.* at 1216, other courts have correctly held that Section 3731(b)(2)'s tolling provision is not even available unless the government has intervened, *see, e.g.*, *U.S. ex rel. Sanders v. N. Am. Bus. Indus., Inc.*, 546 F.3d 288, 293 (4th Cir. 2008).

[14] 4 years: N.M. Stat. § 37-1-4; Tex. Civ. Prac. & Remedies Code § 16.051. *See U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 817-18 (E.D. Tex. 2008) (four-year period applies when Texas chooses not to intervene).

6 years: Cal. Gov't Code § 12654(a); Col. Rev. Stat. § 25.5-4-307(1); Conn. Gen. Stat. § 17b-301d(1); 6 Del. Code Ann. § 1209(a)(1); D.C. Code § 2-381.05(a); Fla. Stat. § 68.089(1); Ga. Code Ann. § 49-4-168.5; Haw. Rev. Stat. § 661-24; 740 Ill. Comp. Stat. 175/5(b)(1); Ind. Code § 5-11-5.5-9(b)(1); La. Rev. Stat. Ann. § 46:439.1(B); Mass. Gen. Laws ch. 12 § 5K(1); Mich. Comp. Laws Ann. § 400.614(1)(a); Minn. Stat. § 15C.11(a); Mont. Code Ann. § 17-8-404(1)(a); Nev. Rev. Stat. § 357.170(1); N.H. Rev. Stat. Ann. § 167:61-b(VII)(a); N.J. Stat. Ann. § 2A:32C-11; N.C. Gen. Stat. Ann. § 1-615(a); 63 Okla. Stat. § 5053.6(B)(1); R.I. Gen. Laws § 9-1.1-5(b)(1); Tenn. Code Ann. § 71-5-184(b)(1); Va. Code Ann. § 8.01-216.9; Chicago Mun. Code Ch. 1-22-040(b)(1).

to the Complaint until April 3, 2013, so the limitations period for those claims must be calculated from the date of those amendments.  *See* Doc. 34 at ¶¶273-79 (CO), 334-39 (MN).  All these state claims should be dismissed to the extent they rely on alleged claims submitted outside the relevant limitations period.  *See Solvay*, 823 F. Supp. 2d at 523-41 (dismissing claims to the extent barred by statute of limitations and retroactivity); *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 813-18 (E.D. Tex. 2008) (dismissing time-barred claims).

Finally, Brown's California IFPA claim is barred in its entirety because Brown was required to bring it within "three years after the discovery of the facts constituting the grounds for commencing the action."  Cal. Ins. Code § 1871.7(l)(1); Doc. 65 at ¶¶272-79.  By her own admission, Brown discovered the facts constituting the grounds for her IFPA claim in April 2001, immediately after she was hired, *see* Compl. ¶105, yet she did not add the IFPA claim to her complaint until November 6, 2013—almost a decade too late.

## CONCLUSION

For the foregoing reasons, the Third Amended Complaint should be dismissed.

Dated: April 25, 2014                          Respectfully submitted,

JONES DAY AND SIDLEY AUSTIN LLP


By  /s/
    BEONG-SOO KIM

Attorneys for Defendant
CELGENE CORPORATION

---

*(continued...)*

10 years: N.Y. CLS St. Fin. § 192.1; Wis. Stat. §§ 20.931(15), 893.981.

**APPENDIX A:**
**Thalomid® (thalidomide)**

| Alleged Off-Label Use | DrugDex Compendium Support[1] | Program and Time Period to be Dismissed[2] |
|---|---|---|
| Brain Cancer (Compl. ¶62) | "Glioblastoma multiforme of CNS, Recurrent" (Class IIb): § 4.5.V (no later than: 12/07, 12/08); § 4.5.W (6/15/09); § 4.5.X (6/14/10, 12/17/10, 6/11 & 9/11 updates) | Medicaid & Medicare Part D: no later than 12/07 to present |
| Kaposi Sarcoma (Compl. ¶62) | "AIDS-related Kaposi's sarcoma" (Class IIb): § 4.5.C (no later than: 12/07, 12/08; and 6/15/09, 6/14/10, 12/17/10, 6/11 & 9/11 updates) | Medicaid and Medicare Part D: no later than 12/07 to present |
| Lymphoma (Compl. ¶62) | "Malignant tumor of lymphoid hemopoietic and related tissue" (Class IIb): § 4.5.AD (no later than 12/07); § 4.5.AE (no later than 12/08); § 4.5.AF (6/15/09); § 4.5.AG (6/14/10, 12/17/10, 6/11 & 9/11 updates) | Medicaid and Medicare Part D: no later than 12/07 to present |
| Melanoma (Compl. ¶62) | "Malignant melanoma" (Class IIb): § 4.5.AC (no later than 12/07); § 4.5.AD (no later than 12/08); § 4.5.AE (6/15/09); § 4.5.AF (6/14/10, 12/17/10, 6/11 & 9/11 updates) | Medicaid & Medicare Part D: no later than 12/07 to present |
| Prostate Cancer (Compl. ¶62) | "Prostate cancer" (Class IIb): § 4.5.AK (no later than: 12/07; 12/08) § 4.5.AN (6/15/09, 6/14/10, 12/17/10, 6/11 & 9/11 updates) | Medicaid & Medicare Part D: no later than 12/07 to present |
| Multiple Myeloma not in combination w/ Dexa-methasone (Compl. ¶62) | "Multiple myeloma" and listing therapy alone and with drugs other than Dexamethasone (Class IIa): § 4.5.AA (no later than 12/05, 12/06); (Class IIb): § 4.5.AE (no later than 12/07); § 4.5.AF (no later than 12/08); § 4.5.AG (6/15/09); § 4.5.AH (6/14/10, 12/17/10, 6/11 & 9/11 updates) "Multiple myeloma, newly diagnosed elderly or transplant ineligible patients, in combo with melphalan and prednisone" (Class IIa): § 4.5.AJ (6/15/09, 6/14/10, 12/17/10, 6/11 & 9/11 updates) "Multiple myeloma, Advanced, refractory" and listing both therapy alone and with drugs other than Dexamethasone (Class IIa): § 4.5.AF (no later than 12/07); § 4.5.AG (no later than 12/08); § 4.5.AH (6/15/09) | Medicaid and Medicare Part D: no later than 12/05 to present |

| Alleged Off-Label Use | DrugDex Compendium Support[1] | Program and Time Period to be Dismissed[2] |
|---|---|---|
| Myelo-dysplastic Syndromes (MDS) (Compl. ¶82) | "Myelodysplastic syndrome" (Class IIb): § 4.5.AL (6/15/09, 6/14/10, 12/17/10, 6/11 & 9/11 updates) | Medicaid and Medicare Part D: 6/15/09 to present |

**Revlimid® (lenalidomide)**

| Alleged Off-Label Use | DrugDex Compendium Support[3] | Program and Time Period to be Dismissed[2] |
|---|---|---|
| Leukemia (including, but not limited to, CLL) (Compl. ¶63) | "Chronic lymphoid leukemia, Relapsed or refractory" (Class IIb): § 4.5.A (5/8/09, 6/14/10, 4/26/11, 6/11 & 9/11 updates) | Medicaid & Medicare Part D: 5/8/09 to present |
| Lymphoma (Compl. ¶63) | "Non-Hodgkins lymphoma, aggressive disease, relapsed or refractory" (Class IIb): § 4.5.E (6/14/10, 4/26/11, 6/11 & 9/11 updates) | Medicaid & Medicare Part D: 6/14/10 to present |
| New Onset Multiple Myeloma (Compl. ¶63) | "Multiple myeloma, In combination with dexamethasone, first-line therapy" (Class IIa): § 4.5.A (9/20/07; no later than 12/08); § 4.5.B (5/8/09, 6/14/10, 4/26/11, 6/11 & 9/11 updates) | Medicaid & Medicare Part D: 9/20/07 to present |

[1] The DrugDex compendia for Thalidomide are attached to the Request for Judicial Notice. The dates presented here refer to the exhibits to the Request for Judicial Notice as follows: December 2005 (Exhibit 1); December 2006 (Exhibit 2); December 2007 (Exhibit 3); December 2008 (Exhibit 4); June 15, 2009 (Exhibit 5); June 14, 2010 (Exhibit 6); December 17, 2010 (Exhibit 7); June 2011 (Exhibit 8); September 2011 (Exhibit 9).

[2] For both Thalidomide and Lenalidomide, some of the DrugDex compendia entries do not contain a "last modified" date or a "database updated" date, so such entries were considered effective no later than the stated expiration date.

[3] The Lenalidomide DrugDex compendia are attached to the Request for Judicial Notice. The dates presented here refer to the exhibits to the Request for Judicial Notice as follows: September 20, 2007 (Exhibit 10); December 2008 (Exhibit 11); May 8, 2009 (Exhibit 12); June 14, 2010 (Exhibit 13); April 26, 2011 (Exhibit 14); June 2011 (Exhibit 15); September 2011 (Exhibit 16).

## DECLARATION OF BEONG-SOO KIM

I, Beong-Soo Kim, declare as follows,

1.     I am a partner in the law firm of Jones Day, co-counsel of record for defendant Celgene Corporation ("Celgene"). I am one of the attorneys principally responsible for representing Celgene in this action. I have personal knowledge of the facts set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.     On April 2, 2014, my co-counsel Sean Commons of Sidley Austin LLP and I met and conferred by telephone with David Fischer, counsel for Relator Beverly Brown, concerning the bases for the Celgene's Motion to Dismiss the Third Amended Complaint, as required by L.R. 7-3. We continued to discuss these matters over the course of the following weeks. As a result of our efforts, Relator's counsel and we were able to reach agreement on the limited dismissal of several of Relator's state FCA claims. We have memorialized that agreement in a stipulation and proposed order filed with the Court earlier today. Despite both parties' efforts, however, counsel for the Relator and we were unable to resolve all of the issues in Celgene's motion to dismiss, thus necessitating the filing of Celgene's motion.

I declare that the foregoing is true and correct under penalty of perjury of the laws of the United States of America.

Executed April 25, 2014 in Los Angeles, California.

BEONG-SOO KIM

**SIGNATURE ATTESTATION**

I am the ECF User whose identification and password are being used to file the

foregoing NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF-

RELATOR'S THIRD AMENDED COMPLAINT and MEMORANDUM OF

POINTS AND AUTHORITIES in support thereof.  In compliance with Civil Local

Rule 5.4.3.4(a)(2)(i), I hereby attest that the signatory has concurred in the content of

the filing and has authorized this filing.

Dated:  April 25, 2014

By: /s/ *Sean A. Commons*