Thomas H. Bienert, Jr., State Bar No. 135311
tbienert@bmkattorneys.com
Ariana Seldman Hawbecker, State Bar No. 190506
ahawbecker@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Tel: (949) 369-3700/Fax (949) 369-3701

Reuben A. Guttman *(admitted pro hac vice)*
rguttman@whistleblower.com
Traci L. Buschner *(admitted pro hac vice)*
tbuschner@gbblegal.com
Justin S. Brooks *(admitted pro hac vice)*
jbrooks@gbblegal.com
Dan Guttman *(admitted pro hac vice)*
diguttman@aol.com
GUTTMAN, BUSCHNER & BROOKS PLLC
1625 Massachusetts Ave., NW, Suite 500
Washington, DC 20036
Tel: (202) 800-3001/Fax: (202) 827-0041

Richard A. Harpootlian (*admitted pro hac vice*)
rah@harpootlianlaw.com
Christopher P. Kenney (*admitted pro hac vice*)
cpk@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Post Office Box 1090 (29201)
Columbia, South Carolina 29202
Tel: (803) 252-4848/Fax: (803) 252-4810

Judge Nancy Gertner (Ret.) (*admitted pro hac vice*)
ngertner@law.harvard.edu
Langdell 328
1525 Massachusetts Ave.
Cambridge, Massachusetts 02138
Tel. (617) 851-3812

Attorneys for Plaintiff - Relator
BEVERLY BROWN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, the States of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WASHINGTON, WISCONSIN, the DISTRICT OF COLUMBIA, and the CITY OF CHICAGO,<br><br>Plaintiffs,<br>*Ex rel.*<br><br>BEVERLY BROWN,<br><br>Plaintiff-Relator,<br>v.<br><br>CELGENE CORPORATION,<br><br>Defendant. | Case No. 10-cv-03165 GHK (SSx)<br><br>**DECLARATION OF STEPHEN Z. FADEM, M.D. IN SUPPORT OF RELATOR'S MOTION TO COMPEL INTERROGATORY RESPONSES, THE PRODUCTION OF DOCUMENTS, AND ADDITIONAL DEPOSITION TESTIMONY** |

**DECLARATION OF STEPHEN Z. FADEM, M.D. IN SUPPORT OF RELATOR'S MOTION TO COMPEL INTERROGATORY RESPONSES, THE PRODUCTION OF DOCUMENTS, AND ADDITIONAL DEPOSITION TESTIMONY**

I, Stephen Z. Fadem, M.D. declare as follows:

1.  My name is Stephen Z. Fadem, and I am a nephrologist practicing in Houston, Texas. I have been retained by Relator's counsel to provide an expert opinion as to whether

statutorily recognized drug compendia and scientific evidence and literature on which the compendia rely support the off-label uses Relator alleges Celgene promoted.[1] My expert report is due on September 25, 2015.

    2.    As will be detailed in full in my report, it is my opinion that the compendia do not support the off-label uses of Thalomid and Revlimid that Relator alleges Celgene promoted. Specifically at the time Relator alleges Celgene promoted the uses at issue, there was not adequate acceptable published scientific evidence that these drugs were safe and effective for the off-label uses that were listed and promoted. However, Celgene has either failed to produce or is unable to produce compendia discovery requested by Relator's counsel that is relevant to my analysis; it would further enhance my analysis if it were produced.

    3.    Relator has requested that Celgene produce all compendia in its possession, documents sufficient to identity the dates on which the compendia were obtained and consulted, the bibliography cited, as well as any documentation that identifies the process Celgene employed to evaluate the compendia and any conclusions that were drawn as to the off-label uses at issue in this case. Relator also asked that Celgene provide a narrative identifying the compendia Celgene analyzed, the date of analysis, the individuals who performed any analysis, and any conclusions that were drawn regarding the effectiveness of Thalomid and Revlimid to treat the off-label uses identified in Relator's complaint. Finally, Relator asked that Celgene produce a witness to testify as to Celgene's formal and informal processes governing review of the compendia and use of the compendia in its public representations regarding its drugs. For the reasons set forth below, the requested discovery would assist my analysis.

---

[1] I will detail my qualifications in greater detail in my report, but by way of background for the Court, I have participated in the development of clinical guidelines and measures, participated in pharmacy and therapeutics meetings, and have both developed clinical protocols for multicenter clinical trials and have been a principal investigator in clinical trials. I have served in the editorial board of medical journals and have been active in the peer review process.

4. In a decision with which I was provided, this Court held "Whether or not any particular use is 'supported' by the compendia is a complex, case-by-case inquiry". (**Exhibit A** at 6). I fully agree; appropriate analysis requires an evaluation of the underlying scientific studies cited by the compendia and the language the compendia used in their monographs to describe the off-label use of Revlimid and Thalomid. Whether the compendia and the studies they cite were free from undue influence by Celgene is highly relevant as to whether or not the compendia entry can be considered reliable. To make this analysis, one must have access to any process used by Celgene to assess the compendia. This must be appraised in conjunction with Celgene's communications to the compendia and actions they took that would influence the contents of the compendia.

5. I am able to reach some conclusions as to these issues based on the evidence I have seen to date, but the evidence provided is incomplete and should be supplemented further.

6. The evidence I have seen to date documents Celgene exercised undue influence over both the scientific publications on which the compendia relied and the actual language the compendia used in drafting monographs.[2] Documents provided to me thus far detail how Celgene's marketing department implemented a publications plan to "manage" scientific publications to further Celgene's marketing and promotional needs. The plan was enacted by Celgene contractor Excerpta Medica, a component of Elsevier, one of the world's leading scientific/medical publishers. (**Exhibit B**, CELBRN0280498). When Excerpta Medica and Celgene began their relationship, Excerpta Medica promised Celgene it would "leverage" its relationship with its corporate affiliates on Celgene's behalf. (*Id.*) Celgene appears to have done that.

7. Celgene and Excerpta Medica developed an extensive publication process that gave Celgene and Excerpta Medica significant involvement and authority as to all steps of

---

[2] This declaration does not address all instances of Celgene's manipulation of the scientific literature or compendia. I expect to provide additional detail and other examples in my report and would address this more fulsomely still if the discovery Relator requests is authorized and provides more information.

the research and publication process, from study selection, to researcher and author selection, to editing. (*See* **Exhibit C** at 5). Throughout my entire career, now spanning 35 years, I have come to rely on the scientific literature, including Elsevier publications, as highly reliable and unbiased resources on which I could rely to make complex clinical decisions. This degree of involvement in purportedly independent, unbiased scientific publications is highly disappointing and very unsettling to me as a practicing physician, and I believe is not fully disclosed, known to or appreciated by the medical community at large and perhaps the compendia. This is shocking and taints my view of how the scientific literature is created.

8. A majority of studies cited by the compendia do not establish the safety or efficacy of off-label usage –they are preliminary investigations of use of Thalomid or Revlimid to treat off-label conditions and cannot be held as supportive of substantive conclusions. Whether the compendia were aware of Celgene's role in influencing these studies and publications is relevant.

9. Relevant to my analysis is the degree to which Celgene influenced the compendia and whether the compendia based their description of off-label uses of Thalomid and Revlimid on urgings by Celgene rather than a careful examination of the underlying scientific data. There is existing evidence to this effect. By way of example, in 1999, Celgene's Director of Medical Affairs Kenneth Resztak sought to induce the American Hospital Formulary Service (AHSF) to change its forthcoming monograph for Thalomid. (*See* **Exhibits D, E**.) In his communication to an AHFS editor, Dr. Resztak, stated "Activity in the treatment of multiple myeloma has clearly been demonstrated." (Exhibit D at 003264; Exhibit E). Handwritten comments on a copy of the document indicate that AHSF was unwilling to state that activity was clearly demonstrated but would change its language to say "Phase II work has been initiated." (Exhibit E). Among other requested changes, Dr. Resztak also stated that AHFS's statement that "thalidomide should be considered the 'drug of last resort' is not a fair statement" and claimed, "In multiple myeloma it may

become first line therapy." (*Id.*) Handwritten responses indicate that e someone at ASHP wrote, "I'm not sure this is true," and "See our reword." (*Id*).

10. The AHFS compendium indeed appears to have reworded the proposed monograph in response to Dr. Resztak's letter. No published version of the AHFS compendium stated that Thalomid should be considered "the drug of last resort" for multiple myeloma as did the draft to which Dr. Resztak objected. Consistent with the comments responding to Dr. Resztak's letter, the 2001 AHFS compendium stated: "Several phase II studies have been initiated to evaluate use of thalidomide (usually as part of a combination regimen) for the treatment of refractory or relapsed multiple myeloma." Exhibit F. at 3659.[3]

11. Counsel also informs me that whether Celgene knowingly or recklessly misrepresented the contents of the compendia us at issue in this case. In some respects, this is a legal issue to be argued by counsel and decided by the Court or jury. But I can provide a factual assessment as to whether any of Celgene's representations constitute a scientifically plausible interpretation of the compendia's treatment of particular off-label

---

[3] As addressed in my report, the altered language and underlying scientific evidence still does not support the uses Relator alleges (and documents indicate) Celgene promoted. For example, addressing multiple myeloma, the 2001 AHFS compendium stated that the "the role of the drug [Thalomid] as monotherapy and as a component of chemotherapeutic regimes in earlier stages of the cancer remains to be determined.' Exhibit F. at 3659 and 3660. AHFS correctly continued to use this language even after Thalomid received its indication for multiple myeloma over half a decade later. Relator alleges that Celgene promoted Thalomid for newly diagnosed multiple myeloma essentially upon receipt of its 1998 indication for ENL.

uses of Thalomid and Revlimid.[4] Celgene's processes for assessing the compendia have relevance to this issue as well. To the extent I am provided with discovery on any processes Celgene adopted and/or employed to assess the contents of the compendia, I can assess whether any methodology Celgene used to evaluate the compendia and underlying science on which they rely is scientifically valid and employs a reasonable analysis.

12. I would like to see any evidence that shows the compendia undertook an independent analysis of scientific studies free from undue influence by Celgene and that Celgene, in turn, adopted and implemented a process to assess the compendia's treatment of the scientific literature. If Celgene instead had no formal or informal process to evaluate the contents of the compendia because it controlled the information from which the compendia drew their conclusions and directly influenced the compendia's presentation of those conclusions, that is relevant to my assessment of reliability of the compendia and Celgene's public representations of compendia contents.

13. In short, my career experience and background enables me to offer critical insights into key elements of this case. But, my analysis involves complex and highly interrelated issues. In order to provide the most thorough analysis possible, I need a complete understanding of Celgene's interactions with the compendia, including the

---

[4] Current evidence indicates they do not. For example, in an email provided to me, Celgene's employee Eileen Finnegan stated that the 2000 edition of edition of the American Hospital Formulary Service compendium (AHFS) "recognized Thalomid's effectiveness in several off-label indications including many cancer uses (breast, ovarian, head etc.)." **Exhibit G**. Through 2008, the AHFS stated that Thalomid was "being evaluated for the treatment of a variety of malignancies, including advanced or metastatic breast cancer], Kaposi's sarcoma]', melanoma+', multiple myeloma]', ovarian cancer+', primary brain tumors]' (recurrent high-grade astrocytomas and mixed gliomas), androgen-independent prostate cancer+', and renal carcinoma]." **Exhibit H** at 3697-98. Ms. Finnegan's interpretation – which it appears was communicated to Celgene's most senior executives, scientists, sales representatives and outside physicians (*see* Exhibit G) – is not a scientifically plausible assessment of the compendium.

manner in which it both influenced and evaluated the contents of the compendia.[5] The discovery sought by Relator's counsel that has not been produced would help provide this understanding.

Stephen Z. Fadem, M.D., FACP
Kidney Associates, PLLC

Digitally signed by Stephen Fadem
DN: cn=Stephen Fadem, o=Stephen Z Fadem MD PA, ou, email=fadem@bcm.edu, c=US
Location: Houston
Date: 2015.09.21 13:37:54 -05'00'

Stephen Z. Fadem, M.D., FASN

---

[5] Relatedly, I understand that important third party discovery remains pending. Four depositions of the compendia are outstanding. I understand that Relator's counsel noticed these depositions with ample time for me to review the testimony had these depositions taken place on the noticed dates. Because of the compendia's unavailability and scheduling conflicts they are instead taking place after my report is due. I reserve the right to supplement my report to address relevant testimony.

# CERTIFICATE OF SERVICE

That I am a citizen of the United States and am a resident or employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

That I am employed by a member of the United States District Court for the Central District of California and at whose direction I caused service of: **DECLARATION OF STEPHEN Z. FADEM, M.D. IN SUPPORT OF RELATOR'S MOTION TO COMPEL INTERROGATORY RESPONSES, THE PRODUCTION OF DOCUMENTS, AND ADDITIONAL DEPOSITION TESTIMONY** on the interested parties as follows:

X **BY ELECTRONIC MAIL:** by electronically filing the foregoing with the Clerk of the District Court using its ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies said parties in this case:

Howard F. Daniels
howard.daniels@usdoj.gov

Jay Edward Smith
js@gslaw.org

Kimberly A. Dunne
kdunne@sidley.com
laefilingnotice@sidley.com

Sean A. Commons
scommons@sidley.com
laefilingnotice@sidley.com

Michelle B. Goodman
mgoodman@sidley.com

Brian D. Hershman
bhershman@jonesday.com

Toni-Ann Citera
tcitera@jonesday.com

Karen P. Hewitt
kphewitt@jonesday.com

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 22, 2015 at San Clemente, California.

*/s/ Michele Ueda /s/*
Michele Ueda