**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES, et al., ex rel. BEVERLY BROWN,<br><br>           Plaintiff-Relator,<br><br>   v.<br><br>CELGENE CORPORATION,<br><br>           Defendant. | Case No. CV 10-3165 GHK (SS)<br><br>**MEMORANDUM DECISION AND ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART RELATOR'S MOTION TO DE-DESIGNATE CERTAIN CONFIDENTIAL DISCOVERY AND TO STRIKE PARAGRAPH 5 OF THE PROTECTIVE ORDER; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART RELATOR'S APPLICATION TO FILE EXHIBITS TO SUPPLEMENTAL AUTHORITY UNDER SEAL**<br><br>**(Dkt. Nos. 268, 271 & 272)** |

**I.**

**INTRODUCTION**

On February 16, 2016, Relator Beverly Brown ("Relator") and Defendant Celgene Corporation ("Defendant") filed a joint stipulation in connection with Relator's Motion to De-Designate Certain Confidential Discovery and [to] Strike Paragraph 5 of the

Protective Order.  (Dkt. No. 265).  The Motion was stricken and superseded the next day, February 17, 2016, by a "Corrected Joint Stipulation regarding Relator's Notice of Motion and Motion to De-Designate Certain Confidential Discovery and Strike Paragraph 5 of the Protective Order."  ("Motion" or "Jt. Stip.," Dkt. No. 268 (redacted), Dkt. No. 269 (unredacted)).[1]  Relator filed the declarations, and accompanying exhibits, of Dr. Charles Bennett, who serves as Relator's expert, and counsel Justin S. Brooks in support of the Motion.  (Id.).  In opposition to the Motion, Defendant filed the declarations, and accompanying exhibits, of Celgene's General Manager of Hematology Oncology, Tom Cavanaugh; Corporate Vice President, Head of Global Drug Safety & Risk Management, John Freeman; Chief Medical Officer, Dr. Jerome Zeldis; and counsel Brian Hershman.  (Id.).

On February 23, 2016, Relator filed a document captioned "Supplemental Authority in Support of Motion and Motion to De-Designate Certain Confidential Discovery and Strike Paragraph 5 of the Protective Order," including several attached exhibits.[2]

_____

[1] The unredacted version of the Corrected Joint Stipulation filed under seal at Docket No. 269 is mistakenly identified as a "Declaration" in the docket entry.  (See Dkt. No. 269-1).

[2] Relator's "Supplemental Authority" was docketed as a "Notice of Motion and Motion to Supplement Motion to De-Designate Certain Confidential Discovery and Strike Paragraph 5 of the Protective Order re Joint Notice of Motion and Motion to File Document Stipulation and Declarations Under Seal."  (Dkt. No. 272).  However, from the substance of the document, it appears to be a supplemental memorandum in support of the Motion.

Concurrently with the supplemental memorandum, Relator also filed an "Application for Leave to File Discovery Material Designated by Defendant Celgene as Confidential Under Seal Pursuant to L.R. 79-

5.2.2(b)," which concerned three exhibits (Exhs. A, B, and C) that are deposition excerpts that Relator sought to file either under seal or in redacted form. (Dkt. No. 271). The Application as docketed at Dkt. No. 271 attached a redacted copy of Exhibit B only. However, the Application was accompanied by the declaration of Justin S. Brooks, filed under seal, which attached as a single document unredacted copies of all three exhibits. (Dkt. No. 273). The Application concerned the three exhibits submitted in support of the supplemental memorandum only. These materials were therefore not covered by the Court's separate Order granting leave to redact or file under seal documents submitted in connection with the Joint Stipulation. (See Dkt. No. 274).

Defendant filed a Response to Relator's Application to File Under Seal on February 29, 2016. (Dkt. No. 276). Defendant stated that despite the requirement in Local Rule 79-5-2.2(b), Relator did not consult with counsel for Defendant before submitting the documents under seal to determine if Defendant would stipulate to the public filing of the exhibits. (Id. at 1). Defendant stated that Relator's Exhibits A and C (transcript excerpts of the depositions of John Freeman and Dr. Paul Richardson) did not need to be filed under seal and Defendant consented to their public filing.

However, Defendant objected to Relator's Exhibit B, which was the full transcript of the deposition of Dr. William Bensinger, one of Defendant's retained experts, on the ground that it consisted of the entire transcript of Dr. Bensinger's deposition, and therefore the Local Rule only authorized the submission of deposition excerpts in connection with a motion. (Id.) (citing L.R. 7-6). According to Defendant, the excerpts of Dr. Bensinger's deposition transcript that Relator relies on in the supplemental memorandum do not contain confidential information and may be filed publicly, but other, uncited portions of Dr. Bensinger's deposition transcript do contain confidential information. Defendant proposes that the Court order that Dr. Besinger's deposition transcript either "(1) be re-filed publicly with only those excerpts upon which Plaintiff relies in her brief; or (2) the following portions of the deposition of Dr. William Bensinger be redacted and sealed: 54:14-20, 55:3-9, 134:24-135:8, 135:24-136:3, 138:8-23, and 140:8-141:11." (Id. at 2). On March 1, 2016, Relator filed a Reply. (Dkt. No. 277).

Relator's Application with respect to Exhibits A and C is DENIED as MOOT. Relator's Application with respect to Exhibit B is DENIED for failure to comply with the Local Rules. Relator is ORDERED to re-file Exhibits A and C as a public document, along with the excerpts from Exhibit B upon which Relator relies in the supplemental memorandum that do not contain confidential

3

("Supp. Memo.," Dkt. No. 272).  Defendant did not file a supplemental memorandum.  On March 8, 2016, the Court held a hearing.  For the following reasons, and the reasons stated at the hearing, Relator's Motion to De-Designate Certain Confidential Discovery and Strike Paragraph 5 of the Protective Order is GRANTED IN PART AND DENIED IN PART.

## II.

### FACTUAL BACKGROUND[3]

Relator commenced this civil action alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., in 2010. Relator alleges that Defendant unlawfully marketed certain drugs to cancer patients and their physicians for unapproved purposes and paid kickbacks to physicians for prescribing the drugs off label.  (Dkt. No. 72, ¶¶ 3-18).  On October 1, 2013, the District Judge ordered the complaint unsealed and served on Defendant, along with the government's Notice of Election to Decline Intervention. (Dkt. No. 59).  The operative Third Amended Complaint was filed on February 5, 2014.  (Dkt. No. 72).

---

information.  Relator shall not re-file the entire transcript of Dr. Bensinger's deposition transcript, but only the specific pages cited in its supplemental memorandum.  The excerpts may not include any of the portions of Dr. Bensinger's testimony that Defendant has identified as confidential.  The Court refers the parties to the "Guide To Electronically Filing Under-Seal Documents In Civil Cases (November 2015 version)" which is available on the Central District's website at "www.cacd.uscourts.gov/e-filing/sealed-documents."

[3] The Parties' contentions relating to the merits of Relator's action are exhaustively presented in the Joint Stipulation and will not be repeated here.  (Jt. Stip. at 7-50).

4

On August 29, 2014, before the production of any documents, the Parties filed a Stipulated Protective Order. (Dkt. No. 156). The Court declined to adopt the Order as submitted and instructed the Parties to include a "good cause" statement in any future proposed protective order. (Dkt. No. 158). On September 19, 2014, the Parties filed a revised Stipulated Protective Order with a good cause statement, (Dkt. No. 160, at 1-3), which the Court entered on September 22, 2014. ("Protective Order," Dkt. No. 161).

Pursuant to the Protective Order, any party may designate information or documents as "Confidential Information" if the party "has the reasonable and good faith belief that such information is non-public and constitutes her, his, or its trade secret, other confidential information within the meaning of Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, or [is] otherwise protected from public disclosure." (Id. at 4-5). Furthermore, Paragraph Five of the Protective Order states:

> All information or documents disclosed in this Action, whether or not containing Confidential Information, shall be used solely for purposes of this Action and not in connection with any other litigation or judicial or regulatory proceeding or for any business, commercial, competitive, personal or other purpose.

(Id. at 5).

\\

\\

**III.**

**RELATOR'S MOTION AND THE PARTIES' CONTENTIONS**

Relator seeks to remove the "Confidential" designation Defendant applied to "key deposition transcripts and . . . 33 of 655,000 documents Celgene produced in this action."[4]   (Jt. Stip. at 2).   Relator also moves to strike the provision in Paragraph 5 of the Protective Order that prohibits the use of any documents or information produced in this case, whether or not designated as confidential, for any other purpose except the litigation of Relator's claims in this action.   (Id. at 2-3).   According to Relator, the challenged materials reveal, among other things, that:

- Defendant's products, Thalomid and Revlimid, pose ongoing threats to patient health and safety due to the

---

[4] The disputed documents and deposition transcripts are attached as exhibits to Dr. Bennett's declaration.   Although Dr. Bennett states that "the documents and deposition testimony included in the accompanying Appendix of Exhibits as Exhibits 1 through 44[] should immediately be disclosed to physicians, patients, and the public at large," it does not appear that Relator's Motion to de-designate implicates all 44 exhibits.   (Bennett Decl. ¶ 10).   Dr. Bennett admits that "Exhibits 10, 17-20, and 34-3[6] are publicly available articles, or, as I understand it, otherwise belong to third parties who do not object to the contents being made public."   (Id. ¶ 10 n.1).

Accordingly, Relator appears to be challenging the designations applied to Exhibits 1-9, 11-16, 21-33, and 37-41 only.   Of these, thirty-three exhibits are documents produced by Defendant.   (Id., Exhs. 1-9, 11-16, 21-27, 29-33, 39-44).   Three exhibits are deposition excerpts.   (Id., Exhs. 28 (Jerry Zeldis deposition); 37 (Bob Hugin deposition); and 38 (John Freeman deposition)).

allegedly undisclosed risk of deep vein thrombosis ("DVT") and the need for appropriate prophylaxis;[5]

- Defendant delayed post-marketing safety studies that the FDA mandated for Thalomid and Revlimid; and

- the integrity of the healthcare system is compromised because Defendant exerted control or influence over all information on off-label uses of Thalomid and Revlimid.

(Id. at 8-30; see also Supp. Memo. at 3 ("Celgene overstated efficacy and minimized safety concerns of its drugs, commandeered the science and literature, and created conflicts of interests not adequately disclosed to physicians.")).

Relator does not presently seek to use the challenged materials in a court filing, although Relator argued at the hearing that she may rely on some or all of the documents to oppose Defendant's anticipated motion for summary judgment. Instead, Relator argues that because the documents and testimony "implicate serious and immediate public health concerns" and "the public health risks are too great to wait to disclose the subset of information that is the subject of this motion," the challenged materials "must be made publicly available to facilitate physician and patients' informed treatment decisions." (Jt. Stip. at 4;

---

[5] At the hearing, Relator appeared to suggest that the public health threats were not limited to the risk of DVT from the use of Revlimid and Thalomid.

see also Supp. Memo. at 3 ("Full disclosure on these issues is needed so doctors and patients can make informed treatment decisions.")).

Defendant argues that the factual premise of Relator's Motion is false because the medical community was (and is) well-informed of the DVT risk, Defendant investigated and publicized the risk, and did not manipulate any scientific data or improperly orchestrate the dissemination of such data. (Id. at 35-48). Nonetheless, Defendant has agreed to de-designate 15 of the 33 challenged documents, "subject to limited redactions of employee and physician names." (Id. at 7). Defendant further states that it is willing to de-designate the portions of the deposition transcripts cited or quoted by Relator.[6] (Id. at 62 n.46). However, Defendant contends that there is good cause to maintain the confidentiality of the remaining 18 documents because "they contain sensitive commercial information whose public disclosure will cause competitive harm to Celgene with no countervailing benefit."[7] (Id. at 7).

\\

\\

---

[6] Defendant maintains that apart from the specific excerpts cited by Relator, the remainder of the deposition transcripts should continue to be designated as confidential. (Jt. Stip. at 62 n.46).

[7] Defendant maintains that disclosure of the following exhibits would harm its "competitive interests or third-party privacy interests": Exhibits 11-12, 16, 21-26, 30, 32-33, and 39-44. (Jt. Stip. at 65-68).   It therefore appears that Defendant has agreed to the disclosure, with certain redactions, of Exhibits 1-9, 13-15, 27, 29 and 31.

**IV.**

**DISCUSSION**

**A.    Standard**

Federal Rule of Civil Procedure 26(c) provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: . . . specifying terms . . . for the disclosure or discovery; designating the persons who may be present while the discovery is conducted; requiring that a deposition be sealed and opened only on court order; [and] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . .

Fed. R. Civ. P. 26(c)(1) (subpart designations omitted). The purposes of a protective order under Rule 26 are to "'expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, adequately protect confidential material, and ensure that protection is afforded only to material so entitled . . . .'"  In re Zyprexa Injunction, 474 F. Supp. 2d

9

385, 397 (E.D. N.Y. 2007) (quoting In re Zyprexa Prods. Liab. Litig., 2004 WL 3520247, at *1 (E.D. N.Y. Aug. 9, 2004)); see also Moore v. Ford Motor Co., 755 F.3d 802, 805 (5th Cir. 2014) (quoting with approval district court decision that explained, the "purpose of protective orders . . . is to facilitate discovery during litigation to allow parties to exchange potentially confidential material with confidence without the Court having to litigate whether or not the material is actually confidential and entitled to protection.").

When determining whether and to what extent information may be shielded from public view, courts distinguish between materials produced during discovery but not filed with the court versus materials attached to "judicial records." In the case of judicial records, courts further distinguish between evidence attached to non-dispositive motions and dispositive motions. The Ninth Circuit has noted that "Rule 26(c) gives the district court much flexibility in balancing and protecting the interests of private parties" when crafting an appropriate protective order to govern discovery. Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1180 (9th Cir. 2006). However, "[u]nlike private materials unearthed during discovery, judicial records are public documents almost by definition, and the public is entitled to access by default." Id. Nonetheless, even when a document is used in a judicial filing, the court will "treat judicial records attached to dispositive motions differently from records attached to non-dispositive motions. Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high

threshold of showing that 'compelling reasons' support secrecy. A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions," but "will not suffice to fulfill the 'compelling reasons' standard that a party must meet to rebut the presumption of access to dispositive pleadings and attachments." Id. (internal citations omitted); see also Pintos v. Pacific Creditors Ass'n, 605 F.3d 666, 678 (9th Cir. 2009), as amended (May 21, 2010) (Rule 26(c)'s lower "good cause" standard applies to documents produced in discovery that "are not part of the judicial record" as well as to "previously sealed discovery attached to a nondispositive motion").

With respect to information obtained through court-sanctioned discovery that has yet not been "admitted" in a judicial proceeding, the Supreme Court has expressly found that where a "protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 37 (1984). As the Seattle Times Court explained, proceedings to obtain private information through court-authorized discovery methods "were not open to the public at common law" and are generally "conducted in private as a matter of modern practice." Id. at 33. According to the Seattle Times Court, protective orders not only protect a private party's interests, but also further a "substantial government interest" because discovery permitted by the Federal Rules "has a significant potential for abuse," which

the government "has a substantial interest in preventing." Id. at 35; see also Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092 (9th Cir. 2016) (citing with approval Anderson v. Cryovac, Inc., 805 F.2d 1, 13 (1st Cir. 1986), for the proposition that "[t]here is no tradition of public access to discovery, and requiring a trial court to scrutinize carefully public claims of access would be incongruous with the goals of the discovery process.").

The "good cause" standard requires a particularized showing that "specific prejudice or harm will result" if the information is disclosed. Phillips v. Gen. Motors Corp., 307 F.3d 1206, 1210-11 (9th Cir. 2002). The party opposing disclosure has the burden of proving "good cause." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir. 2003). Courts routinely protect sensitive business and proprietary information where disclosure would put the producing party at a competitive disadvantage. See, e.g., Serono Labs., Inc. v. Shalala, 35 F. Supp. 2d 1, 2 (D. D.C. 1999) ("In a field as competitive and technical as the pharmaceutical industry, success or failure will turn in large measure on innovation and the members of the industry justifiably hoard their trade secrets as jealously as a miser hoards his gold."); Andrx Pharm., LLC v. GlaxoSmith Kline, 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information.") (internal quotation marks and citation omitted).

In addition, courts routinely approve "blanket" or "umbrella" protective orders to govern the production of categories of documents instead of requiring a showing of good cause on a document-by-document basis.  As one court observed,

> Although the 'good cause' requirement dictates that a movant demonstrate that disclosure will cause a "clearly defined and serious injury," umbrella protective orders may also be appropriate. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786-87 (3d Cir. 1994). Additionally, "[b]lanket protective orders routinely are approved by courts in civil cases[.]" Gillard v. Boulder Valley Sch. Dist., 196 F.R.D. 382, 386 (D. Colo. 2000). **As such, a showing of good cause "may be done on a generalized as opposed to a document-by-document basis."** Foley v. Signator Investors, Inc., 2003 WL 22844110, at 1* (D. Kan. 2003).

Transamerica Life Ins. Co. v. Moore, 2011 WL 97786, at *2 (E.D. Ky. Jan. 12, 2011) (emphasis added).  Blanket protective orders are particularly warranted where discovery is voluminous.  As one court explained,

> The very first rule set forth in the Federal Rules of Civil Procedure requires courts to construe and administer the rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." See Fed. R. Civ. P. 1.  Blanket protective

orders serve the interests of a "just, speedy, and inexpensive" determination of cases by alleviating the undue cost and delay that would ensue if courts had to make good cause determinations on a document-by-document basis for all documents exchanged in discovery that a party wished to protect. As the Ninth Circuit has implicitly acknowledged, the use of blanket protective orders conserves resources by eliminating the requirement that a party move for a protective order every time that party produces documents they contend are confidential. See Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003) (noting that use of a blanket protective order was "understandable for the unfiled documents given the onerous burden document review entails").

Quality Inv. Properties Santa Clara, LLC v. Serrano Elec., Inc., 2010 WL 2889178, at *1 (N.D. Cal. July 22, 2010).

The Ninth Circuit instructs that a court "considering a motion for a continuation of the protective order must proceed in two steps." In the Matter of Roman Catholic Archbishop of Portland in Oregon (Father M.), 661 F.3d 417, 424 (9th Cir. 2011).

First, it must determine whether "particularized harm will result from disclosure of information to the public." [Phillips, 307 F.3d at 1211.] . . . Second, if the court concludes that such harm will result from

14

disclosure of the discovery documents, then it must proceed to balance "the public and private interests to decide whether [maintaining] a protective order is necessary." [Id.]

Father M., 661 F.3d at 424.  Factors a court may consider in balancing those interests include:

> (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for an improper purpose; (3) whether disclosure of the information will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefiting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

Id. at 424-25 n.5 (quoting Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995)).  The Court proceeds to analyze the steps and factors described in Father M below.

\\

\\

\\

\\

15

**B.** **Relator Has Not Shown That De-Designation Of The Eighteen Remaining Challenged Documents Is Warranted Or That Paragraph Five Of The Protective Order Should Be Stricken**

Relator does not seek de-designation of the eighteen remaining challenged documents to use them to support her claims in a motion filed with the Court. Instead, Relator intends to use this information, obtained only through discovery, to alert medical professionals and their patients to the alleged dangers of Defendant's products. According to Relator, the dual purposes of the instant Motion are "to put Celgene's protective order abuse to an end and allow critical safety information about Celgene and its products to see the light of day," particularly "Celgene's historical efforts to suppress such information." (Supp. Memo. at 2).

Because Relator is not seeking de-designation of the documents for use with a case-dispositive motion or "judicial record," the less stringent "good cause" standard applies. The Court concludes that Defendant has shown good cause to maintain the confidentiality of the challenged materials. The Court further concludes that Defendant's interest in maintaining the confidentiality of these particular documents presently outweighs the public's interest in their disclosure. As discussed further below, the Court finds that a "particularized harm" will result from disclosure and, after balancing the public and private interests, the protective order should continue. See Father M., 661 F.2d at 424.

Accordingly, Relator's Motion is DENIED to the extent that it seeks de-designation of Exhibits 11-12, 16, 21-26, 30, 32-33, and 39-44, without prejudice to seeking de-designation in a subsequent court filing. Relator must follow the procedures set forth in Local Rule 79, however, and must seek relief before the particular judge deciding the motion. Because Defendant concedes that, subject to "limited redactions of employee and physician names," (Jt. Stip. at 7), Exhibits 1-9, 15, 27, 29 and 31 are not confidential, and that the specific deposition passages (but not the entirety of the deposition transcripts) cited in the instant Motion from Exhibits 28, 37 and 38 are also not confidential, Relator's Motion is GRANTED IN PART with respect to those documents. The confidentiality designation on those documents is lifted, contingent upon the Parties' agreement to the redaction of appropriate employee and physician names, which agreement may not be unreasonably withheld.

Defendant has explained how each of the challenged documents would, if disclosed, harm its competitive or third party privacy interests. (Jt. Stip. at 65-68). Although some, but not all, of the documents are somewhat dated, even the oldest documents reveal Defendant's strategies for the development, launch and field marketing of its products, (Exhs. 11, 12, 32, 43), its methods for analyzing relationships with physicians and clinical development strategies, (Exhs. 33, 40), and its resource and industry analyses, (Exhs. 41, 44), which, when extrapolated, could be used by a competitor to gain insight into Defendant's operations. More recent documents address Defendant's publication planning and

strategic goals, (Exhs. 21, 22, 25, 26), sales force initiatives and financial information, (Exhs. 23-24, 42), and market competitor analyses, (Exh. 39), which similarly would permit a competitor to appropriate Defendant's business strategies.  It is even more likely that documents from as late as 2014 could reveal information about Defendant's existing products and regulatory strategies that would provide competitors with an unfair advantage.  (Exhs. 16, 30).  The Court finds that the challenged documents contain information for which Defendant has good cause to seek protection from disclosure during discovery.  Defendant has made the required showing of particularized harm.  Father M., 861 F.3d at 424.

Having found particularized harm, the Court must balance the public and private interests at stake.  In the totality of the present circumstances, the balance tips in favor of continuing protection for the disputed documents.  The Court agrees with Relator that certain of the Glenmede Trust factors either favor de-designation or are neutral.  For example, the Glenmede Trust court observed that "the 'embarrassment' factor has typically been viewed in terms of non-pecuniary harm to individuals," while "the primary measure of the well-being of a business is pecuniary." Glenmede Trust, 56 F.3d at 483.  This factor would therefore appear to favor de-designation, although in a particular case, a court could consider pecuniary harm from disclosure.  Additionally, because all parties to the litigation are in possession of the challenged materials, "whether the sharing of information among litigants will promote fairness and efficiency" is not at issue. Id.  However, the factors need not be given the same weight, and,

pursuant to the Glenmede Trust court, need not all be considered in a given case. See id. ("[T]he district court is best situated to determine what factors are relevant to the dispute . . . ."). Here, as Relator repeatedly emphasizes, the primary consideration that could conceivably override Defendant's privacy interests in keeping the information confidential is whether "confidentiality is being sought over information important to public health and safety." Id. (emphasis added).

The public's need for the information in these documents at this time is questionable. This action was filed in 2010. The complaint was unsealed on October 1, 2013. (Dkt. No. 59). The operative Third Amended Complaint was filed on February 5, 2014, (Dkt. No. 72), and the Protective Order was entered on September 22, 2014. (Dkt. No. 161). Relator has evidently been in possession of the same or similar information it now seeks to de-designate for some time, which suggests that the alleged danger to the public that Relator ostensibly wishes to avert by public dissemination of these particular documents is not imminent or acute.

Furthermore, it is not clear to the Court that these particular documents add significantly, if at all, to public awareness about the side effects of Defendant's drugs. The specific danger that Relator identifies in her papers -- the increased risk of DVT from the use of Thalomid and Revlimid and the need for prophylaxis -- has been specifically disclosed in FDA black-box warnings on the labels for those two drugs since 2006. (Jt. Stip. at 69). The medical community is therefore already

19

aware, and has been aware for at least a decade, of the particular harm identified by Relator.

To the extent that Relator's Motion is based on a concern for public safety related to Defendant's newest drug, Pomalyst, which is not specifically at issue in this case, the Court is not persuaded that the disclosure of these particular documents would necessarily advance public safety or would even be helpful. Relator does not appear to argue that these documents directly address any medical risks specifically associated with the use of Pomalyst. (See, e.g., Jt. Stip. at 13) (acknowledging that "there is less known information on safety and side effects" for Pomalyst than for Revlimid and Thalomid). Indeed, in a portion of the Joint Stipulation in which Relator directly addresses her concerns about Pomalyst, Relator relies on information found at a government website and in other publicly available materials. (See id. at 14) (noting that Defendant's final report on its formal safety study of Pomalyst is not due to be submitted to the FDA until January 2017). Therefore, disclosure of the challenged documents, which relate to Revlimid and Thalomid, would not alert the public to any specific risk associated with Pomalyst.

Instead, Relator appears to argue the documents will reveal Celegene's past wrongful conduct and manipulation of the medical community. According to Relator, the documents must be disclosed to the public to sensitize the medical community to Defendant's purportedly improper role in manufacturing data and disseminating false information about Celegene's drugs. (Id. at 13-15). As

previously noted, Relator contends that "[t]he documents at issue show that Celgene overstated efficacy and minimized safety concerns of its drugs, commandeered the science and literature, and created conflicts of interests not adequately disclosed to physicians." (Supp. Memo. at 3).  Relator emphasizes that once informed of Celegene's "behind-the-scene" actions, physicians will understand that the literature about Celegene's drugs, either published about Revlimid and Thalomid or anticipated about Pomalyst, is suspect and should not relied upon.  (Jt. Stip. at 15-26; see also Supp. Memo. at 4 ("Doctors reading purportedly unbiased articles or listening to purportedly unbiased speeches deserve to know how those articles and speeches came about and what role Celgene played in crafting them.")).

There is admittedly a tension between the dual contentions that a company's historical documents should be kept confidential because they reveal information about the company's business practices that competitors could exploit, but that the same information would not be useful to the company's current consumers -- in this case, physicians and patients -- because the information is dated.  However, there is a meaningful difference between business competitors and medical professionals that tips the scales in favor of keeping the documents confidential.  Relator's argument in favor of disclosure of information about Defendant's business strategies and operations for public safety reasons is predicated on the assumption that physicians are naive consumers who, without access to Defendant's proprietary information, lack the critical skills or tools to judge intelligently the trustworthiness of

medical literature about Defendant's products.  However, Defendant presented evidence showing that approximately 85% of all clinical research is funded by pharmaceutical companies, and it is logical to assume that physicians are well aware that pharmaceutical companies have some involvement in packaging and promoting research favorable to their products.  (Hershman Decl., Exh. EE [Haller Report] ¶ 10).  Relator has argued that doctors and the public need to see these documents, but Related has failed to persuade the Court that the documents are genuinely meaningful to public safety. Even if everything Relator alleges about the impropriety of Defendant's role in promoting its drugs were true, which the Court need not and does not resolve for purposes of deciding the instant Motion, the Court is not convinced that public health will be compromised unless these particular documents are de-designated. Thus, the Court concludes that Defendant has shown a particularized harm from disclosure and that the private interest in maintaining the protective order outweighs any public interest in these materials.  Accordingly, Relator's request to de-designate the 18 disputed documents is DENIED.

Finally, the Court declines to strike Paragraph 5 from the Protective Order, which limits the use of documents obtained through discovery to the litigation of Relator's claims.  Relator agreed to that condition in stipulating to the terms of the Protective Order, and Defendant produced a vast amount of information, some of it highly sensitive, in reliance on the limitations on public disclosure memorialized in the Protective Order.  Courts commonly uphold such limitations on the use of

confidential materials obtained through court-sanctioned discovery procedures.  See, e.g., On Command Video Corp. v. LodgeNet Entm't Corp., 976 F. Supp. 917, 922 (N.D. Cal. 1997) ("The purpose of the [Protective] Order is to limit the use of confidential information to this case.  By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the Protective Order.  As such, plaintiff is barred from using any confidential information subject to the Protective Order except in the instant litigation."); Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 220 F.R.D. 349, 353 (N.D. Cal. 2003) (a protective order limiting use of confidential materials obtained in discovery to the instant litigation is "a routine measure"); Scott v. Monsanto Co., 868 F.2d 786, 792 (5th Cir. 1989) ("The plaintiffs were free to use any discovery materials in the development of their case.  The protective order merely restricted use of those materials to this litigation.  Although plaintiffs claim harm from the inability to share and compare information with other litigants in other cases, no prejudice has been shown sufficient to overcome the district court's broad discretion in this area.  The entry of the protective order was not an abuse of discretion."); cf. In re Dual-Deck Video Cassette Recorder Antitrust Litigation, 10 F.3d 693, 694-96 (9th Cir. 1993) (recognizing that it "is common now in business litigation" for the parties to sign "a stipulation for a very broad protective order prohibiting use [or] disclosure of material obtained in discovery," but vacating finding of contempt for violation of the protective order where plaintiff "went to great lengths to avoid revealing in the public filings [in a collateral action] anything

it had learned in discovery" in the instant action and thereby "substantially complied" with the prohibition). Relator's alleged interest in public safety, belatedly raised years after she agreed to the terms of the Protective Order, is not sufficiently compelling to undo the provisions of the Parties' Stipulated Protective Order.

In sum, the importance of the information in these documents is relatively low because the link between Defendant's drugs and an increased risk of DVT is already well known to the public, and because it is logical to assume that the medical community is sufficiently sophisticated to critically evaluate scientific literature about the drugs. In contrast, Defendant's privacy interest in maintaining the confidentiality of its business operations and strategies outweighs the public's interest in these documents because the disclosure of the information could provide Defendant's competitors with an unfair advantage.

Accordingly, Relator's Motion is DENIED to the extent that it seeks re-designation of the eighteen remaining challenged documents, i.e., Exhibits 11-12, 16, 21-26, 30, 32-33, and 39-44, and to strike Paragraph Five of the Protective Order. However, the Motion is GRANTED to the extent that it seeks de-designation of Exhibits 1-9, 15, 27, 29 and 31, contingent upon the Parties' agreement to the redaction of appropriate employee and physician names, which agreement may not be unreasonably withheld, and to the extent that it seeks de-designation of the specific deposition

passages in Exhibits 28, 37 and 38 cited in support of the instant Motion.

**V.**

**CONCLUSION**

For the foregoing reasons, Relator's Motion to De-Designate Certain Confidential Discovery and Strike Paragraph 5 of the Protective Order is GRANTED IN PART AND DENIED IN PART. Relator's Application for Leave to File Discovery Material Designated by Defendant Celgene as Confidential Under Seal, filed in connection with its supplemental memorandum in support of the Motion, is DENIED as MOOT with respect to Exhibits A and C. Relator's Application with respect to Exhibit B is DENIED for failure to comply with the Local Rules. Relator is ORDERED to re-file Exhibits A and C as a public document, along with the _excerpts_ from Exhibit B upon which Relator relies in the supplemental memorandum that do not contain confidential information. Relator shall not re-file the entire transcript of Dr. Bensinger's deposition transcript, but only the specific pages cited in its supplemental memorandum. The excerpts _may not_ include any of the portions of Dr. Bensinger's testimony that Defendant has identified as confidential. The Court refers the parties to the "Guide To Electronically Filing Under-Seal Documents In Civil Cases (November 2015 version)" which is

\\

\\

\\

available    on    the    Central    District's    website    at

"www.cacd.uscourts.gov/e-filing/sealed-documents."


     IT IS SO ORDERED.


DATED:  March 14, 2016

                                        _____/S/_____
                                        SUZANNE H. SEGAL
                                        UNITED STATES MAGISTRATE JUDGE