Thomas H. Bienert, Jr., State Bar No. 135311
tbienert@bmkattorneys.com
Michael R. Williams, State Bar No. 192222
mwilliams@bmkattorneys.com
BIENERT, MILLER & KATZMAN, PLC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Tel: (949) 369-3700/Fax: (949) 369-3701

Reuben A. Guttman (*admitted pro hac vice*)
rguttman@gbblegal.com
Traci L. Buschner (*admitted pro hac vice*)
tbuschner@gbblegal.com
Justin S. Brooks (*admitted pro hac vice*)
jbrooks@gbblegal.com
Dan Guttman (*admitted pro hac vice*)
diguttman@aol.com
GUTTMAN, BUSCHNER & BROOKS PLLC
1625 Massachusetts Ave., NW, Suite 500
Washington, DC 20036
Tel: (202) 800-3001/Fax: (202) 827-0041

Richard A. Harpootlian (*admitted pro hac vice*)
rah@harpootlianlaw.com
Christopher P. Kenney (*admitted pro hac vice*)
cpk@harpootlianlaw.com
RICHARD A. HARPOOTLIAN, PA
1410 Laurel Street
Post Office Box 1090 (29201)
Columbia, South Carolina 29202
Tel: (803) 252-4848/Fax: (803) 252-4810

Nancy Gertner (*admitted pro hac vice*)
ngertner@law.harvard.edu
Langdell 328
1525 Massachusetts Ave.
Cambridge, Massachusetts 02138
Tel: (617) 851-3812

Attorneys for Plaintiff - Relator
BEVERLY BROWN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, the States of CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, FLORIDA, GEORGIA, HAWAII, ILLINOIS, INDIANA, LOUISIANA, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, MONTANA, NEVADA, NEW HAMPSHIRE, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OKLAHOMA, RHODE ISLAND, TENNESSEE, TEXAS, VIRGINIA, WASHINGTON, WISCONSIN, the DISTRICT OF COLUMBIA, and the CITY OF CHICAGO,<br><br><br><br>                    Plaintiffs,<br>                    *Ex rel.*<br><br>BEVERLY BROWN,<br><br>                    Plaintiff-Relator,<br>v.<br><br>CELGENE CORPORATION,<br><br>                    Defendant. | Case No. 10-cv-03165 GHK (SSx)<br>Assigned to the Honorable George H. King<br><br>**NOTICE OF MOTION AND MOTION OF PLAINTIFF-RELATOR BEVERLY BROWN FOR REVIEW OF MAGISTRATE JUDGE'S ORDER (DKT. NO. 320) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. JOEL W. HAY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: October 17, 2016<br>Hearing Time: 9:30 a.m. |

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES………………………………..1

I.  Introduction………..…………………………………………………………………1

II.  Relevant Factual and Procedural Background…………………………………..3

III.  Standard of Review.............................................................................................5

IV.  Judge Segal Erred in Striking Dr. Hay's Opinions Regarding On-Label
Kickback Damages, Co-Pay Foundation Damages, and His Use of the
"Donabedian" Methodology…………………………………………………………..5

   A. Ninth Circuit Precedent Bars Exclusion of Dr. Hay's On-Label and Co-Pay
Assistance Opinions…………………………………………………………………6

     1.  Dr. Hay should also be permitted to quantify damages resulting from
kickbacks paid through co-pay assistance organizations...........................8

     2.  Dr. Hay should be allowed to opine as to the damages suffered by public
payors from on-label prescriptions tainted by kickbacks…………………9

   B. Dr. Hay Should be Allowed to Identify the Methodology he Used by
Name…………………………………………………………………………..10

   C. Under Established Ninth Circuit Authority, Celgene suffered no prejudice
from the Supplemental Report…………………………………………………...14

V.  Conclusion………………………………………………..…………………………..17

# TABLE OF AUTHORITES

**Page(s)**

**Cases**

*Akeva LLC v. Mizuno Corp.*,
    212 F.R.D. 306 (M.D.N.C. 2002) ................................................................... 16

*Amos v. Makita U.S.A., Inc.*, No.,
    2011 WL 43092 (D. Nev. Jan. 6, 2011) .......................................................... 14

*Bonzani v. Shinseki*,
    No. 2:11-CV-00007-EFB, 2014 WL 66529 (E.D. Cal. Jan. 8, 2014) ............ 7

*Burger v. Excel Contractors, Inc.*,
    No. 2:12-CR-01634-APG-CW,2013 WL 5781724 (D. Nev. Oct. 25,
    2013) ........................................................................................................ 15, 16

*Burnett v. United States*,
    No. 15-1707, 2016 U.S. Dist. LEXIS 114323 (C.D. Cal. Aug. 18, 2016) ............... 7, 9

*Calvert v. Ellis*,
    2014 WL 3897949 (D. Nev. Aug. 8. 2014) .................................................... 14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ....................................................................................... 12

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ......................................................................... 12

*Frontline Med. Associates, Inc. v. Coventry Health Care*,
    263 F.R.D. 567 (C.D. Cal. 2009) .................................................................. 15

*Gerawan Farming, Inc. v. Rehrig Pac. Co.*,
    No. 11-1273, 2013 U.S. Dist. LEXIS 67957 (E.D. Cal. May 13, 2013) ....................... 13

*Gicla v. United States*,
    572 F.3d 407 (7th Cir. 2009) ........................................................................... 7

*Goodman v. Staples The Office Superstore, LLC*,
    644 F.3d 817 (9th Cir. 2011) ......................................................................... 14

*Gorton v. Todd*,
    793 F. Supp. 2d 1171 (E.D. Cal. 2011) ......................................................... 11

---

**i**

*Hoffman v. Constr. Protective Servs., Inc.*,
  541 F.3d 1175, 1179 (9th Cir.) ................................................................... 14

*In re ConAgra Foods, Inc.*,
  302 F.R.D. 537 (C.D. Cal. 2014) ................................................................. 12

*In re Methl Tertiary Butyl Ether Prods. Liab. Litig.*,
  643 F. Supp. 2d 471 (S.D.N.Y. 2009) ......................................................... 13

*Lanard Toys Ltd. v. Novelty, Inc.*,
  375 F. App'x 705 (9th Cir. 2010) ....................................................... 9, 11, 15

*Luke v. Family Care and Urgent Medical Clinics*,
  323 Fed. Appx. 496 (9th Cir. 2009) ....................................................... 6, 14

*R & R Sails, Inc. v. Ins. Co. of Pennsylvania*,
  673 F.3d 1240 (9th Cir. 2012) ............................................................. 7, 9, 10

*Ridgeway v. Wal-Mart Stores, Inc.*,
  No. 08-05221, 2016 U.S. Dist. LEXIS (N.D. Cal. Aug. 30, 2016) ............... 15

*Salazar v. A&J Constr. Of Mont., Inc.*,
  No. 11-16, 2012 U.S. Dist. LEXIS 132718 (D. Mont. Sept. 17, 2012) ........ 14

*Thompson v. Doane Pet Care Co.*,
  470 F.3d 1201 (6th Cir. 2006) ..................................................................... 13

*U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*,
  929 F.2d 1416 (9th Cir. 1991) ....................................................................... 9

*U.S. ex rel. Wilkins v. United Health Group, Inc.*,
  659 F.3d 295 (3d Cir. 2011) ........................................................................ 11

*United States v. Finley*,
  301 F.3d 1000 (9th Cir. 2002) ..................................................................... 10

*Wanderer v. Johnston*,
  910 F.2d 652 (9th Cir. 1990) ............................................................ 6, 9, 10, 11

*Wendt v. Host Intern., Inc.*,
  125 F.3d 806 (9th Cir. 1997) ............................................................ 7, 9, 10, 11

*Wolpin v. Philip Morris Inc.*,
  189 F.R.D. 418 (C.D. Cal. 1999) .................................................................... 5

**TABLE OF AUTHORITIES**

*Yeti by Molly, Ltd. V. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ............................................................. 9, 10, 15

**<u>Statutes</u>**

28 U.S.C. § 636(b)(1)(A) ...................................................................................... 5

509 U.S.C. § 592 ................................................................................................. 12

509 U.S.C. § 593 ................................................................................................. 12

Fed. R. Civ. P. 26 ................................................................................................. 6

Fed. R. Civ. P. 72(a) ............................................................................................ 5

Fed. R. Evid. 702 ............................................................................................... 10

**TABLE OF AUTHORITIES**

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on October 17, 2016 at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 650 of the above-entitled Court, located at 255 East Temple Street, Los Angeles, CA 90012, Plaintiff-Relator Beverly Brown will move, pursuant to Federal Rule of Civil Procedure 72(a) and L.R. 72-2.1 to object to the Order issued by the Honorable Suzanne H. Segal, United States Magistrate Judge, granting in part and denying in part Defendant's Motion to Strike Portions of the of the Expert Report of Dr. Joel Hay.  [Dkt. 320].  This Motion is made on the ground that Judge Siegel's order is clearly erroneous and/or contrary to law.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, all papers and pleadings on file in the Court, and such further oral and documentary evidence as may be presented at or before the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 30 and 31, 2016.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    Introduction**

Plaintiff-Relator Beverly Brown ("Relator") files this Motion to seek review of Judge Segal's August 23, 2016 Order granting in part and denying in part Defendant's Motion to Strike Portions of the of the Expert Report of Dr. Joel Hay (the "Order").  Dkt. 320.  Relator does not take this request lightly, and has not previously sought review of any of Judge Segal's orders in this case.  But Relator is obliged to do so here.

At issue in this motion are reports submitted by Relator's damages expert, USC economics professor Dr. Joel W. Hay.   After Dr. Hay submitted his initial report in September of 2015, Relator sought and obtained leave for Dr. Hay to submit a supplemental report to take into account newly-received government claims data.  Immediately after Dr. Hay submitted that report in December of 2015, Celgene objected that he had gone beyond the permitted scope of supplementation.  In a meet and confer call days later, Relator made clear that she disagreed.  But Celgene did not then move to strike Dr. Hay's purportedly improper opinions.  Instead, Celgene had its own experts prepare four separate rebuttal reports responding to each of Dr. Hay's opinions, and spent a full day deposing Dr. Hay about those opinions.  Only then, after using the intervening seven months to respond fully to Dr. Hay's purportedly improper opinions, did Celgene bring its motion to strike.

Because of the complexity of this case, and surely not the sloth of the lawyers or bad faith, the discovery process has been a fluid one.  Defendant Celgene did not finish production until May 25, 2016, and many discovery issues remain unresolved, including thousands of pages of purportedly privileged documents that Celgene claims to have inadvertently produced.  Plaintiff has had to rely on third party sources for data and production that was flawed and delayed.  Relator alerted Celgene to problems in the data long before any expert report was submitted.  In this context, it was entirely fair and consistent with the Rules to give both sides additional time to respond and allow supplementation.

1   But what is not fair is to draw a curtain around Relator's reasonable efforts to sort
2   through the intricacies of the records and cry foul, when Celgene was never disadvantaged.
3   What is not fair is to file a motion to strike seven months after raising the issue, after
4   extensive discovery of Relator's experts and after Celgene submitted its expert reports
5   responding fully to each of the challenged opinions.  What is not fair is to provide Celgene
6   with a windfall, eliminating Relator's ability to present expert testimony on large categories
7   of damages when Celgene had every opportunity to rebut that testimony.
8   The time line below reflects the timing of the relevant events:



MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF-RELATOR BEVERLY
BROWN'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S ORDER (DKT. NO. 320)

As this timeline illustrates, Celgene suffered no prejudice as to any of Dr. Hay's opinions.  Relator limits her objection, however, to three of those opinions.  Specifically, she respectfully requests that this Court reverse the Magistrate Judge's rulings that Dr. Hay should not be permitted to testify (1) concerning the cost of on-label prescriptions for Thalomid or Revlimid written by doctors after the use of these drugs was recommended by paid physician speakers reading Celgene-prepared slides (*see* Order at pp. 14-21); (2) about the damages attributable to kickbacks paid to co-pay assistance organizations (*id.* at pp. 27-31); and (3) using the term "Donabedian" to describe the methodology he has used throughout this case.  *Id.* at pp. 34-36.

The Magistrate Judge's analyses of these issues was clearly erroneous and contrary to law in a number of respects.  Among other things, the Magistrate Judge applied the wrong standard in excluding testimony that effectively precludes a damages presentation on those claims, imposed an unprecedented limitation on the use of certain words to describe the methodology Relator's expert has been using throughout this case, and incorrectly ruled that Celgene suffered prejudice despite clear Ninth Circuit authority to the contrary.

## III.  Relevant Factual and Procedural Background

On April 27, 2010, Relator filed her Complaint in this action.  Among other things, Relator alleged that: (1) payments to physicians to "promote Revlimid use" "constitute[d] illegal kickbacks meant to directly *and or indirectly* encourage the writing of Revlimid prescriptions" (emphasis added) (Dkt. 1 ¶ 134; *id.* ¶¶ 135-39); and (2) Celgene's coverage of patient co-pays for Thalomid and Revlimid through contributions to co-pay foundations constituted unlawful kickbacks.  *Id.* ¶¶ 149, 151.

The case proceeded to discovery after this Court denied most portions of Celgene's Motion to Dismiss Relator's Third Amended Complaint.  Dkt. No. 147.  Party and third-party fact discovery included extensive discovery on payments to physicians through Celgene's speakers' programs as well as Celgene's payments to co-pay foundations, including 30(b)(6) testimony by Celgene executive Katherine Stultz on Celgene's payments to co-pay foundations pursuant to Relator's noticed 30(b)(6) topics.  *E.g.* Dkt. No. 307-1,

3

Brooks Decl. Ex. NN (sealed Stultz testimony); Dkt. No. 305-3, Hershman Decl. Ex. F (public Stultz testimony).

On June 8, 2015, the Court extended the deadline to complete expert discovery from September 25, 2015 to November 20, 2015.  Dkt. 192.  On September 1, 2015, Relator informed Celgene that Dr. Hay planned to supplement his report if he did not receive a usable set of Medicare Part A and Part B data from the government in time for inclusion in his report.  Order at p. 3.  Because the government failed to produce a usable set of Medicare data in time for Dr. Hay to perform his analysis, Relator served an initial version report on September 25 using data from Humana, accessible to Dr. Hay through his university.  *Id.*

On November 4, 2015, the Court granted Relator's motion to supplement Dr. Hay's initial report on December 7, 2015, finding Dr. Hay's inability to use Medicare data was due to factors beyond his control and that substituting Humana data for more comprehensive Medicare data "would permit more accurate damages estimates and further the federal policy of resolving disputes on the merits."  Order at p. 5; Dkt. 253.

Relator served a supplemental report on December 7, 2015. *Id.* This report replaced Humana data with Medicare A and B data and TRICARE data.  Order at p. 5.  On December 23, 2015, the Center for Medicare and Medicaid Services (CMS) notified the parties that, contrary to Dr. Hay's understanding, Prescription Drug Event (PDE) data included Medicare Advantage Plans (also known as Medicare Part C) data.  *Id.* at pp. 5-6.

On January 5, 2016, Celgene sent Relator a letter objecting to portions of Dr. Hay's Supplemental Report as beyond the scope of the Order authorizing supplementation.  Order at p. 6. The parties met and conferred telephonically on January 15, 2016.  *Id.*  On January 19, 2016, the parties submitted a proposed Stipulated Order *agreeing* that Dr. Hay should prepare a revised supplemental report addressing an issue with the TRICARE data and CMS's clarification concerning the Medicare Part C data.  *Id.*  On January 21, 2016, the Court approved the stipulation and vacated the deadline for Dr. Hay to submit his supplemental expert report and for Celgene to submit a rebuttal report.  Dkt. 262.

On April 8, 2016, the Court entered the parties' stipulation authorizing Relator to

4

serve a final, supplemental report ("Final Report") on April 22, 2016, and authorizing Celgene to serve "a rebuttal expert report to the Hay Final Supplemental Report [on] June 3, 2016. Dkt. No. 305-3, Hershman Decl. Ex. U, pp. 647.

Relator served a revised version of Dr. Hay's report on April 22, 2016, corrected and finalized on May 6, 2016 (the "Final Rpt."). Order at p. 7. Celgene's damages expert, Dr. Ian Cockburn, submitted a supplemental rebuttal report on June 3 that greatly embellished his original analyses in ways unrelated to the opinions by Dr. Hay that Celgene has now challenged as untimely. *Id.*; Dkt. 305-1, pp. 48-50. Another of Celgene's experts, Leslie Norwalk, did the same. Dkt. 305-1, pp. 51-52. Two other Celgene experts—Dr. James Clark, and Dr. Daniel Remund—also issued supplemental rebuttal reports in response to Dr. Hay's Report. *See* Brooks Decl. ¶ 95. Celgene deposed Dr. Hay on June 24, 2016. Order at p. 7.

On July 25, 2016, six months after the parties' "meet and confer," the submission of four rebuttal reports, and thoroughly deposing Dr. Hay on each of his opinions, Celgene filed its Motion to Strike at issue here. Dkt. 305. On August 23, 2016, Judge Segal issued the Order, granting the motion in part and denying it in part.

## II.    Standard of Review

A district court must set aside a magistrate judge's ruling on a non-dispositive matter if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "The 'clearly erroneous' standard applies to the magistrate judge's findings of fact; legal conclusions are freely reviewable de novo to determine whether they are contrary to law." *Wolpin v. Philip Morris Inc.*, 189 F.R.D. 418, 422 (C.D. Cal. 1999). A magistrate judge's decision is clearly erroneous when the district court has a "definite and firm conviction that a mistake has been committed." *Id.*

## IV.    Judge Segal Erred in Striking Dr. Hay's Opinions Regarding On-Label Kickback Damages, Co-Pay Foundation Damages, and His Use of the "Donabedian" Methodology.

Rule 26(e) imposes an affirmative duty on all parties to supplement disclosures when

5

"the party learns that in some material respect the information disclosed is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1).  This duty extends to expert disclosures included in the report and information given during the expert's deposition. Fed. R. Civ. P. 26(e)(2). "Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due."  *Id.*  "Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Luke v. Family Care and Urgent Medical Clinics*, 323 Fed. Appx. 496, 500 (9th Cir. 2009).

As the Order recognized, Relator did not claim Dr. Hay's supplementation was based solely on Medicare data.  Order at p. 25.  Rather, some of his new opinions were based on "other information produced too late for [Dr. Hay] to analyze in his Original Report."  Dkt. No. 305-1, p. 5.  The Order strongly suggests Dr. Hay's expert supplementation was improper to the extent it was not predicated on Medicare A and B data as originally envisioned by the parties and the Court.  Order at pp. 17, 20, 27.  Under *Luke*, however, supplementation based on *any* new information or to correct inaccuracies is required up to the time of pre-trial disclosures, independent of any specific order by the court contemplating supplementation based on particular information.  *Luke*, 323 Fed. Appx. at 500; *see also Colony Ins. v. Colo. Cas. Ins. Co.*, No. 12-01727, 2014 U.S. Dist. LEXIS 72616, at *3, n.4 (D. Nev. May 28, 2014).  Supplementation in keeping with this standard is proper whether or not it was not based on Medicare A and B data.

For this reason alone, the Court should reverse the Order as contrary to law.  Further, the Order is in error for a number of additional reasons.

## A.  Ninth Circuit Precedent Bars Exclusion of Dr. Hay's On-Label and Co-Pay Assistance Opinions

The Magistrate Judge's first error arose because she applied the wrong legal standard in support of her decision to exclude Dr. Hay's on-label and co-pay assistance opinions.  In *Wanderer v. Johnston*, 910 F.2d 652 (9th Cir. 1990), the Ninth Circuit held that the sanction of default or dismissal as a remedy for Rule 26 violations required consideration of (1) the

public's interest in expeditious resolution of litigation, (2) a court's need to manage its docket, (3) risk of prejudice to the defendants, (4) public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Id.* at 656.  In *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997), the Court extended this test to the exclusion of testimony as a sanction for a Rule 26 violation.

By striking Dr. Hay's opinions concerning on-label and copay assistance kickback damages, the Order excludes evidence the jury needs to reach a damages verdict on these issues and "[t]hus in practical terms, the sanction amounted to dismissal of a claim." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania,* 673 F.3d at 1247 (9th Cir. 2012) ("the sanction was particularly harsh, because it dealt a fatal blow" to appellant's fees claim and request for punitive damages). In these circumstances, a court must (a) consider whether the alleged noncompliance involved willfulness, fault, or bad faith, and (b) order testimonial exclusion only after a determination that a lesser sanction is unavailable.  *Id.* (citing *Wendt*, 125 F.3d at 814); *see also Burnett v. United States*, No. 15-1707, 2016 U.S. Dist. LEXIS 114323, at *12, n.1 (C.D. Cal. Aug. 18, 2016) (*R & R Sails* **requires** a court to consider the availability of lesser sanctions and willfulness where preclusion "may not completely foreclose any relief on [p]laintiff's claim" but "'effectively eviscerates'" categories of damages);  *Bonzani*, 2014 U.S. Dist. LEXIS 2209, at *5 (same).

As explained below and as the Magistrate Judge previously recognized, exclusion is disfavored even if a Rule 26 violation causes harm and is generally viewed as improper if less severe sanctions are available. Dkt. No. 305-1 p. 42, n.22; Dkt. No. 299, p. 19; *Burnett*, 2016 U.S. Dist. LEXIS, at *7 (Rule 37(c)(1) exclusionary sanctions are not mandatory, even when the insufficient disclosures are not substantially justified or harmless); *Gicla v. United States*, 572 F.3d 407, 412 (7th Cir. 2009).  Exclusion, in other words, is a last resort under the present circumstances, and a court errs when it excludes evidence without finding lesser sanctions are inadequate.  *R & R Sails*, 673 F.3d at 1247-48.  The Order does not include any such finding and is therefore contrary to law.

### 1.   Dr. Hay should also be permitted to quantify damages resulting from kickbacks paid through co-pay assistance organizations.

As a threshold issue, Judge Segal's conclusion that Dr. Hay presented a "new theor[y] of liability" with respect to payments to co-pay foundations is clearly erroneous.  Order, pp. 30-31.  Relator has alleged that Celgene's contributions to co-pay foundations constituted unlawful kickbacks since filing her initial complaint in 2010 (Dkt. No. 1 ¶¶ 149, 151), and the theory was the product of extensive first party and third party discovery, including 30(b)(6) testimony by Katherine Stultz, whose testimony was detailed in briefing before Judge Segal.  Dr. Hay merely adopted and ascribed damages to a pre-existing theory of liability, long known to the parties, to assist the jury in reaching a damages number once it returns a liability verdict under the co-pay theory.  The Medicare Part A and B data allowed Dr. Hay to identify the universe of on-label prescriptions that received co-pay assistance, and if a jury finds Celgene liable for off-label promotion paying kickbacks to co-pay foundations, Dr. Hay's report allows apportionment between on- and off-label kickback damages in order to avoid double-counting damages.

In addition to its awareness of this longstanding basis of liability, Celgene had repeated notice of Dr. Hay's intention to update his co-pay analysis to assign damages to Celgene's contributions to co-pay foundations.  In his September 25, 2015 report he noted his awareness that "certain non-profit organizations assisted patients with the co-pays for Revlimid and Thalomid" but was "unable to identify the amount of government money expended in connection with Revlimid and Thalomid prescriptions facilitated by these organizations *based on existing documents and data*."  Dkt. No. 305-5, Hershman Decl., Ex. I ¶ 100 [Dkt. 307] (emphasis added).  Dr. Hay cited the Medicare A and B data as "additional discovery [that] may be forthcoming" to assist his analysis.  Dkt. 307 ¶ 100.  In his December 2015 report, he explained that "[p]rior to obtaining the Medicare Parts A and B data for analysis, [he] was unable to accurately apportion kickback payments between on-label and off-label share and unable to accurately assess the additional impact of kickback damages over and above Celgene's direct illegal off-label marketing and

---

promotion."  Hershman Decl. Exh. K ¶ 55 [Dkt. 307].  Still lacking Medicare Part A and B data, he was unable to identify the portion of government money that funded off-label prescriptions for patients receiving Celgene-funded co-pay assistance.

Finally, the Magistrate excluded this opinion without consideration of the *Wanderer/Wendt* factors.  Excluding Dr. Hay's ability to testify concerning co-pay damages with respect to co-pay foundation PANF is akin to dismissal because, although there is ample record evidence to establish AKS and FCA *liability*, exclusion of Dr. Hay's calculations leaves the jury without a clear basis to quantify actual damages.  *See R & R Sails,* 673 F.3d at 1247; *Burnett*, 2016 U.S. Dist. LEXIS 114323, at *12, n.1.[1]  The Order's misplaced analysis of prejudice does so to the exclusion of other mandatory considerations like expediency, docket management, public policy, and lesser available sanctions. *See* Order at pp. 27-31.   These considerations restrain imposition of harsh evidentiary exclusions and the failure to weigh them requires correction.

## 2.    Dr. Hay should be allowed to opine as to the damages suffered by public payors from on-label prescriptions tainted by kickbacks.

As with co-pay damages, Ninth Circuit precedent forecloses the Magistrate Judge's exclusion of Dr. Hay's calculations of government spend for on-label Thalomid and Revlimid prescriptions because she did not consider lesser sanctions or properly analyze willfulness.  The Order's reliance on *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705 (9th Cir. 2010) and *Yeti by Molly, Ltd. V. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)* is misplaced because it does not consider how the Ninth Circuit subsequently modified the standards articulated in this cases.

The Magistrate Judge concluded *Yeti by Molly* imposes a "'self-executing,'

---

[1] CDF produced information sufficient to identify every Thalomid and Revlimid claim for which it provided co-pay assistance, and the jury is entitled to assign civil penalties to each claim paid by a government payor upon finding liability even without ability to calculate actual damages on a claim-by-claim basis.  *U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991).  It cannot do the same for PANF because its production did not provide the necessary detail to identify each prescription, effectively foreclosing recovery on these claims without Dr. Hay's calculations.

9

'automatic' exclusion of untimely expert disclosures" (Order, p. 12), but this ignores the Ninth Circuit's subsequent clarification cabining the application of *Yeti by Molly* in a case such as this.  In *R & R Sails*, the court found no abuse of discretion in the district court's finding a Rule 26 violation occurred, but took issue with the exclusion remedy and the adequacy of the trial court findings in support.  673 F.3d at 1247.  "[I]n practical terms, the sanction amounted to dismissal of a claim[,]" which warranted consideration of the *Wanderer/Wendt* factors.  *See id.* ("We now reaffirm the existence of that requirement when a district court conducts the harmlessness inquiry required under Rule 37(c)(1).").  In distinguishing *Yeti by Molly*, the *R & R Sails* Court was troubled that the district court's exclusion remedy was "particularly harsh, because it dealt a fatal blow not only to R & R's entire *Brandt* fees claim but also its request for punitive damages."  *Id.*  A different result was warranted in *R & R Sails* because although the remedy in *Yeti by Molly* was onerous, it was something "less than a dismissal[.]"  *Id.* at 1248 n.1.

Here, there are a number of less drastic sanctions available to remedy any purported harm.  In fact, Celgene has already benefited from such sanctions, including by deposing Dr. Hay on his new opinions and submitting additional expert reports rebutting them.  Notably, when Celgene challenged Relator's rebuttal expert, Dr. Charles Bennett, as an improper rebuttal witness (a mischaracterization) and subject to exclusion, Judge Segal was properly skeptical of this characterization and any alleged harm.  *See* Dkt. No. 299 at 16-20.  Judge Segal explained that even if she credited Celgene's argument, "the prejudice to Defendant appears easily curable" by allowing Celgene to "sur-rebut" Dr. Bennett's so-called "rebuttal."  *Id.* at 18-20.  But here, the Order fails to consider whether this or some other lesser sanction would suffice.

The Magistrate Judge's decision also frustrates a jury's ability to resolve this case on the merits by striking Dr. Hay's testimony without appreciating his role in assisting the jury's understanding of an exceedingly complex dispute.  The purpose of expert testimony is to assist the trier of fact in deciding matters outside the common knowledge of a lay person.  *See United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002); *see also* Fed. R.

Evid. 702.  In recognition of important role expert testimony can play, the federal rules authorize court-appointed experts (*see* Fed. R. Evid. 706) where expert testimony "will promote accurate factfinding." *Gorton v. Todd*, 793 F. Supp. 2d 1171, 1179 (E.D. Cal. 2011).  The Order's exclusion sanction compromises this goal because it fails to appreciate the deleterious effect excluding Dr. Hay's opinion will have on the jury's ability to consider damages tethered to specific theories of liability.

The jury will hear testimony and consider documents that support a finding that kickbacks taint on-label prescription of Celgene's drugs by non-speakers.  *See U.S. ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 313 (3d Cir. 2011) (recognizing a violation of the AKS ensues when relator shows defendant show Celgene knowingly and willfully paid or offered payment to doctors to *recommend* other doctors write prescriptions reimbursed by public healthcare programs).  But absent the relief sought here, the jury will not have a reliable, mathematical methodology to quantify this on-label injury.

These factors weigh heavily against exclusion, as did other factors common to both the *Wanderer/Wendt* factors and *Lanard Toys*.  The Order concedes, "Defendant admittedly had some opportunity to rebut Dr. Hay's Supplemental Report and to depose Dr. Hay about the findings in his Supplemental Report."  Order at p. 19.  It also acknowledges "no trial date has yet been set." *Id.* Thus, of the five factors a court must consider in weighing whether to exclude testimony—expediency, docket management, prejudice, public policy, and lesser available sanctions—at least four mitigate against exclusion.

### B.    Dr. Hay Should be Allowed to Identify the Methodology he Used by Name.

The Court should reverse the Order's prohibition against Dr. Hay's use of the term "Donabedian structure-process-outcome analysis" ("Donabedian").  At deposition, Dr. Hay explained the term described the methodology he employed from *the outset* of this case and that the Donabedian model was the most reliable methodology given the circumstances of this case.  Hay Dep. at 68:12-69:12, 75.6-76:10, 77:8-21, 80:22-81:25 & 82:22-86:7 [Dkt. 305-6].  Likewise, his Final Report explains that he "followed the same fundamental approach used in [his] Opening Report," updating "damage calculations utilizing [his]

11

1   *original* methodology." Hay Final Rpt. ¶ 71 (emphasis added) [Dkt. 305-7]. Nevertheless,

2   the Magistrate Judge held, "[b]ecause Dr. Hay did not use the term 'Donabedian' to describe

3   his methodology in either his original or Supplemental Report, the Court agrees he may not

4   use that term when he testifies." *Id.*

5       At oral argument, the Magistrate Judge explained she understood Relator's argument

6   that the "Donabedian method was utilized by the expert when he did his original analysis[,]"

7   and the Order does not purport to adopt Celgene's unsupported assertion that substantive

8   changes in Dr. Hay's report were the product of sudden adoption of the method. Dkt. No.

9   320, p. 36. Rather Judge Segal confirmed Dr. Hay "can stick with whatever he said in the

10  original report[.]" *See* Hearing Tr. at 18:20-19:5 [Dkt. 335]. Likewise, the Order does not

11  bar Dr. Hay from explaining to this Court that he applied a long-standing methodology used

12  by economists and professors. But the Magistrate Judge concluded that the possibility Dr.

13  Hay's methodology would be credited as "a more prestigious acceptable persuasive

14  methodology" through use of the term was "not fair[,]" and if "that was important to . . .

15  the Relator, it should have been in the original report." *Id.* 19:6-10.

16      This narrow limitation is not supported by logic and serves little useful purpose, but

17  creates great potential for confusion and unduly complicates discussion of the methodology

18  Dr. Hay employed. For example, the decision limits the Court's ability to obtain

19  definitional information probative of its gatekeeping function in a *Daubert* proceeding and

20  compromises a jury's ability to assess credibility. As to *Daubert*, the decision limits the

21  Court's ability to probe the novelty of Dr. Hay's methodology, its relationship to established

22  methodologies accepted by the scientific community, specialized literature, non-judicial

23  uses of the methodology, its error rate, and the qualifications and statute of experts

24  employing the methodology (all factors the Court's gatekeeping function). *Daubert v.*

25  *Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. at 592–93; *see also Ellis v. Costco Wholesale*

26  *Corp.*, 657 F.3d 970, 982 (9th Cir. 2011)*; In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 549

27  (C.D. Cal. 2014). If testifying at the hypothetical *Daubert* hearing discussed above, Dr.

28  Hay would only have to be asked, "has anyone else used the methodology you used here?"

and he could respond, "yes,  the theory was developed in 1966," *might* be able to testify that it was developed by Dr. Avedis Donabedian, but would never be allowed to name the model and would be hampered in his ability to describe its use as a practical model in economics and how it is taught in schools in the manner he did at deposition.  Because the Donabedian prohibition invades this Court's role as gatekeeper, it should be removed.

The prohibition is also unsupported by case law. The Magistrate Judge did not cite and Relator did not find any precedent applying a testimonial restriction analogous to the one imposed here.  On the contrary, the only law remotely relevant to the issue warrants a contrary finding.[2]  *See, e.g., Thompson v. Doane Pet Care Co.*, 470 F.3d at 1203-04 (6th Cir. 2006) (explaining that Rule 26 anticipates an expert "will supplement, elaborate upon, explain, and subject himself to cross-examination on his report" and rejecting district court's "mechanical and formalistic ruling" forbidding expert to testify and explain to jury that his methodology used generally accepted accounting principles because his report "did not expressly use the magic words 'based on generally accepted accounting principles'"); *In re Methl Tertiary Butyl Ether Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 481-82 (S.D.N.Y. 2009) (agreeing Rule "26(a)(2)(B) does not limit an expert's testimony to simply report reading his report" and "contemplates that the expert will supplement, elaborate upon, explain and subject himself to cross-examination upon his report" and applying standard to conclude that failure to include an actual percentage figure for defendant's market share in the expert report and supplementing with a declaration more than 30 days before trial "hardly rises to the level of unacceptable sandbagging" and preserved the ability to testify on the figure at trial); *see also Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 11-1273, 2013 U.S. Dist. LEXIS 67957, at *2-3 (E.D. Cal. May 13, 2013) (expert allowed to testify at trial on topics not addressed in any written expert reports because "whatever prejudice was caused by the lack of a written report was insignificant in light of the fact that Plaintiff fully deposed [her] on the issue). In light of the foregoing, the Donabedian testimonial

---

[2] Relator distinguished the authorities Celgene cited in its motion as involving the addition of substantive new theories. *See* Order at pp. 35-36 (appearing to concur in that reading).

restriction should be lifted.

### C. Under Established Ninth Circuit Authority, Celgene suffered no prejudice from the Supplemental Report.

Finally, and critically, the Court should conclude that the Magistrate Judge's determination that Celgene suffered prejudice from Dr. Hay's Supplemental Report was clear error. While Rule 37(c)(1) imposes sanctions to incentivize disclosure, exclusion is unwarranted if the failure to disclose is substantially justified or harmless. *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011). In fact, "[n]o sanction is warranted [ ] where it is found that noncompliance with Rule 26 was 'substantially justified' or 'harmless.'" *Salazar v. A&J Constr. Of Mont., Inc.*, No. 11-16, 2012 U.S. Dist. LEXIS 132718, at *31-32 (D. Mont. Sept. 17, 2012) (citing Rule 37(c)(1); *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008).

The distinction between harmlessness and prejudice turns largely on whether the opposing party has adequate time to respond. The common thread among cases where prejudice exists is the opposing party's inability to respond because of late disclosure. *See*, *e.g.*, *Goodman*, 644 F.3d at 827 (expert disclosure one month after opposing party's disclosure deadline passed was not harmless), *Luke*, 323 F. App'x at 500 (affirming exclusion of expert disclosures served two months after rebuttal deadline); *see also Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir.), as amended (Sept. 16, 2008) (rejecting harmlessness claim where late disclosure would require new briefing schedule and additional discovery).

Conversely, a party is not harmed when a violation occurred, but "the party knew about the expert, knew about the content of the expert's testimony, and had an opportunity to depose the expert." *Amos v. Makita U.S.A., Inc.*, No., 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011); *see also Calvert v. Ellis*, 2014 WL 3897949, at *5 (D. Nev. Aug. 8. 2014) (declining to exclude untimely expert who could still be deposed and "less severe sanctions" were available). In other words, "[h]armlessness may be established if a disclosure is made sufficiently in advance of the discovery cut-off date to permit the opposing party to conduct

discovery and defend against the damages claims." *Frontline Med. Associates, Inc. v. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009).

Judge Segal's finding of prejudice turns on "a surprise to Defendant," not an inability to respond. *See* Order at p. 19. Not only was Celgene able to respond to the Supplemental Report, but it did so by serving four supplemental expert reports. On June 3, 2016, *four* Celgene experts issued rebuttal reports in response to Dr. Hay's Supplemental Report. *See* Brooks Decl. ¶ 95 [Dkt. 305-4]. Each of these experts had already submitted a report and sat for a deposition. *Id.* ¶ 95. Celgene also had ample opportunity to explore all aspects of Dr. Hay's opinions—including the topics at issue here—during an eight-hour deposition conducted *after* Celgene received the Supplemental Report.

A purportedly aggrieved party afforded the opportunity Celgene has had to respond is never prejudiced. For instance, the facts in *Burger v. Excel Contractors, Inc.*, No. 2:12-CR-01634-APG-CW, 2013 WL 5781724 (D. Nev. Oct. 25, 2013), are strikingly similar to the Order's findings, but reached the opposite conclusion as to prejudice. The *Burger* defendant moved to strike a supplemental expert report arguing the supplemental information was available at the time of the initial disclosure. *Id.* at *1. The magistrate agreed with defendant but found the violations "harmless." *Id.* at *3-4. In reaching this conclusion, the court cited factors present here: defendant's awareness of the new information, rebuttal experts with time to review and rebut the supplement, and expert depositions yet to occur, thus making any surprise or prejudice "easily cured" though steps short of exclusion. *Id.* at *4; *see also Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-05221, 2016 U.S. Dist. LEXIS, at *34-35 (N.D. Cal. Aug. 30, 3016) (applying *Yeti by Molly* and *Lanard Toys* and declining to exclude any testimony relating to alleged untimely report based on lack of harm, where moving party had "not been deprived of its ability to meaningfully depose [expert] as to the individual damages claims" and also "sought and received an extension of time for their expert to file a supplemental rebuttal report.")

This rationale holds particular weight here because Celgene benefited from its delay in moving to strike by bolstering its expert reports on issues unrelated to the supplemental

opinions it challenges. This manifests most clearly in the greatly enhanced supplemental rebuttal report by Celgene's economic expert Dr. Iain Cockburn.  Dkt. No. 305-1 pp. 48-50. As set forth in more detail in briefing before the Magistrate Judge, Dr. Cockburn's October 2015 rebuttal identified but did not apply various factors Dr. Hay purportedly failed to consider that allegedly reduce damages, while his supplemental rebuttal applied these factors – including new and unfounded assumptions provided by counsel – to apply large purported reductions to Dr. Hay's damage estimates.  *Id.*

Likewise, Celgene expert Leslie Norwalk used Dr. Hay's supplemental report as a pretext to deepen and broaden opinions on the topics not addressed by Dr. Hay that are instead set forth in her own initial report.  She principally does this through extensive briefing of the Medicare Part D Appeals process, an issue Dr. Hay's Final Report does not discuss.  Dkt. No. 305-7, Ex. GG ¶¶ 12-20. Celgene then used Ms. Norwalk's improper supplemental arguments in its summary judgment briefing (Dkt. No. 325, pp. 19, 26 (citing Exhibit 17, Ms. Norwalk's rebuttal)).

In fact, in declining to strike Dr. Hay's opinions concerning Medicare Part C damages, Judge Segal concluded that Celgene was not "unduly prejudiced" because two Celgene experts offered rebuttal testimony on this issue and Celgene conducted "extensive[ ]" cross-examination of Dr. Hay during his deposition.  Dkt. No. 320 p. 24.  This same rationale applies to all of Dr. Hay's challenged opinions.

Finally, Celgene's previous argument, asserting that Rule 16 governs sanctions and prejudice determinations rather that Rule 37, relies on *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 309 (M.D.N.C. 2002) and is misplaced.[3]  *See, e.g., Burger*, 2013 U.S. Dist. LEXIS 153535, at *4-5 (finding that *Akeva* only applies to service of a new or rebuttal expert report after the Scheduling Order's deadline for expert discovery and does not apply to an "an expert's attempted supplementation of his own conclusion [initially submitted timely.] The duty to supplement expert reports is governing by 26(e)(2) and any sanctions

---

[3] This is not a finding the Magistrate Judge adopted: the Order does not assert that Rule 16 governs a determination of harmlessness and cites *Akeva* but not for this proposition.

from the failure to comply therewith stem from Rule 37(c), not Rule 16(f).")

In sum, Judge Segal's conclusion Celgene was prejudiced is clearly erroneous. No other court in this Circuit has ever applied Ninth Circuit precedent to conclude that prejudice remains (even from an untimely and improper supplemental disclosure) after a party willingly incurs expenses by challenging alleged improper supplemental opinions through deposition and rebuttal – rather than timely moving to strike – and enriches its own experts' analyses on unrelated issues in doing so. Accordingly, this Court should conclude any purported disclosure violation was harmless and reverse the Order.

## V.    Conclusion

For the reasons set forth above, the Court should reverse the Order with respect to (1) Dr. Hay's testimony as to the spend of government payors for on-label prescriptions for Thalomid or Revlimid written by doctors after attending speeches of paid physician, promotional speakers recommending these drugs; (2) Dr. Hay's testimony as to damages attributable to kickbacks paid to co-pay assistance organizations; and (3) and Dr. Hay's use the term "Donabedian" to describe his methodology.

Dated:  September 6, 2016

Respectfully Submitted,

BIENERT, MILLER & KATZMAN, PLC


By: */s/ Michael R. Williams /s/*
    Thomas H. Bienert, Jr.
    Michael R. Williams

Reuben A. Guttman *(admitted pro hac vice)*
Traci L. Buschner *(admitted pro hac vice)*
Justin S. Brooks *(admitted pro hac vice)*
GUTTMAN, BUSCHNER & BROOKS PLLC

Richard A. Harpootlian *(admitted pro hac vice)*
Christopher P. Kenney *(admitted pro hac vice)*
RICHARD A. HARPOOTLIAN, PA

Nancy Gertner *(admitted pro hac vice)*

*Attorneys for Plaintiff-Relator*
*BEVERLY BROWN*

18

## CERTIFICATE OF SERVICE

I, Michele Ueda, declare,

That I am a citizen of the United States and am a resident or employed in Orange County, California; that my business address is 903 Calle Amanecer, Suite 350, San Clemente, California 92673; that I am over the age of 18 and not a party to the above-entitled action.

That I am employed by a member of the United States District Court for the Central District of California and at whose direction I caused service of: **NOTICE OF MOTION AND MOTION OF PLAINTIFF-RELATOR BEVERLY BROWN FOR REVIEW OF MAGISTRATE JUDGE'S ORDER (DKT. NO. 320) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE EXPERT REPORT OF DR. JOEL W. HAY; MPA** on the interested parties as follows:

**X   BY ELECTRONIC MAIL:**  by electronically filing the foregoing with the Clerk of the District Court using its ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies said parties in this case:

| | | |
|---|---|---|
| Brian Hershman<br>bhershman@jonesday.com | Michelle B. Goodman<br>mgoodman@sidley.com | Kimberly A Dunne<br>kdunne@sidley.com |
| Sean A Commons<br>scommons@sidley.com | Toni-Ann Citera<br>tcitera@jonesday.com | Karen Hewitt<br>kphewitt@jonesday.com |
| jdelmedico@JonesDay.com | Howard F. Daniels<br>howard.daniels@usdoj.gov | Jay Edward Smith<br>js@gslaw.org |

This certificate was executed on September 6, 2016, at San Clemente, California.

I certify under penalty of perjury that the foregoing is true and correct.

*/s/ Michele Ueda /s/*
Michele Ueda