Kimberly A. Dunne (SBN 142721)
kdunne@sidley.com
Michelle B. Goodman (SBN 218607)
mgoodman@sidley.com
Sean A. Commons (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Brian D. Hershman (SBN 168175)
bhershman@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Toni-Ann Citera (admitted *pro hac vice*)
tcitera@jonesday.com
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Attorneys for Defendant
CELGENE CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

UNITED STATES OF AMERICA, *et al.*, *ex rel.* BEVERLY BROWN,

Plaintiff-Relator,

v.

CELGENE CORPORATION,

Defendant.

Case No. 10-cv-03165 RGK (SSx)

Assigned to: Hon. R. Gary Klausner

**DEFENDANT CELGENE CORPORATION'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 7 TO EXCLUDE VERBATIM REPORTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 25, 2017, at 9:00 a.m. before the Honorable R. Gary Klausner in Courtroom 850 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California, Defendant Celgene Corporation ("Celgene") will and does hereby move the Court for an *in limine* order to exclude all "verbatim" reports as inadmissible double hearsay and due to lack of authentication. Fed. R. Evid. 801(c), 901(a), (b)(1).

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, all pleadings and papers on file herein, and any additional argument and material the Court may consider at the hearing on this Motion.

This Motion is made following the conference of counsel, pursuant to Local Rule 7-3, which occurred on March 8, 2017 (the soonest possible date after the parties received this Court's Order on March 6, 2017).

Dated: March 10, 2017

Respectfully submitted,

JONES DAY and SIDLEY AUSTIN LLP

By: /s/ *Kimberly A. Dunne*

Attorneys for Defendant
CELGENE CORPORATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Relator has indicated her intent to rely on a third-party vendor's reports that purport to summarize unnamed doctors' after-the-fact recollections of conversations with unnamed Celgene sales representatives. Relator apparently intends to use these so-called "Verbatim" reports to show—using a few lines plucked from thousands of pages—that Celgene's sales representatives promoted Thalomid® and Revlimid® for off-label uses. But the Federal Rules of Evidence forbid this for two reasons. *First*, the Verbatims contain two layers of hearsay, as they represent (1) the unsworn, out-of-court statements made by doctors, purportedly describing conversations with Celgene sales representatives, which were then (2) collected in Alpha Impact Rx's ("AIRx's") unsworn, out-of-court reports to Celgene. Because Relator seeks to rely on this double hearsay for the truth of the matter asserted (namely, that Celgene affirmatively encouraged doctors to prescribe Thalomid® and Revlimid® for off-label uses), and because neither layer of hearsay falls within any hearsay exception, the reports are inadmissible under Federal Rule 802. *Second*, even if the Verbatims were not inadmissible hearsay, they cannot be authenticated, as there is no way to verify that these unsigned reports—memorializing summaries provided by unnamed doctors—actually are what they purport to be. Accordingly, the Verbatims are inadmissible under Rule 901.

**BACKGROUND**[1]

AIRx (which is no longer in business) was an independent company that provided market research to various pharmaceutical companies, including Celgene. In order to help companies evaluate the effectiveness of their sales representatives, AIRx contracted with a panel of doctors to provide after-the-fact summaries of their

[1] These facts are based on an email that AIRx's counsel sent counsel for both parties in September 2015. That email is attached as Exhibit A (Dkt. 403-1).

interactions with pharmaceutical sales representatives. Although AIRx requested that doctors prepare their summaries immediately after each visit with a representative, there is no way of confirming how soon after a visit the doctor actually submitted a summary. At some point after the doctor provided a summary to AIRx, AIRx would prepare a chart that combined summaries accounting for hundreds of doctor–representative interactions. For a time, Celgene contracted with AIRx to assist with market research for its products.

Although AIRx initially referred to the summary reports as "Verbatims," its counsel candidly acknowledged that this was a "misnomer." Ex. A, Dkt. 403-1. The summaries do *not* actually purport to transcribe the doctors' conversations with Celgene sales representatives. Instead, each summary consists of no more than a few sentences (and, in many instances, just a few words) to distill a doctor's after-the-fact recollection of a conversation. The summaries typically do not describe how a topic was introduced into the conversation—for instance, whether it was brought up by the doctor or by the sales representative. Nor do the summaries purport to capture the entirety of each doctor–representative interaction. Instead, the summaries simply reflect a doctor's perception and recollection of what was discussed. *See, e.g.*, S. Tomasello Tr. 83:3-13 (lodged with the Court, Dkt. No. 346) (Celgene's former Senior Vice President for U.S. and Latin America, explaining that she "didn't find [verbatims] useful," because "you have no idea in the verbatims exactly how the conversation took place, who said what, you don't know who the physician was").[2] For these reasons, AIRx later changed the name of these reports from "Verbatims" to "Unaided Messages," to reflect the fact that the summaries *do not* contain verbatim transcription and that doctors generated summaries without any prompting. (Nevertheless, because the parties have

---

[2] For reference, examples of Verbatims have previously been filed in this case. Dkt. Nos. 330-6 to 330-13.

previously used the term "Verbatims" in this litigation, Celgene will continue to use that term here.)

Relator has indicated that she intends to introduce the Verbatims at trial as evidence of Celgene's alleged off-label promotion of Thalomid® and Revlimid®. For the reasons discussed below, any attempt to introduce these documents by Relator is impermissible under the Federal Rules of Evidence and should be precluded.

## **ARGUMENT**

The Verbatims are inadmissible. They constitute hearsay upon hearsay, and neither layer of hearsay comes within any exception that would render the documents admissible. And even if Relator could get around the bar on hearsay, there is no way of authenticating the Verbatims.

### I. THE VERBATIMS ARE INADMISSIBLE DOUBLE HEARSAY.

The Verbatims plainly constitute hearsay, as they purport to reflect a third-party vendor's out-of-court statements purporting to summarize entirely separate out-of-court statements made by doctors. There can be no doubt that each layer constitutes hearsay, which Rule 801(c) defines as any statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

To begin, it is indisputable that both the doctors' summaries of their recollections and the reports compiling those summaries consist entirely of out-of-court statements. Moreover, Relator has made clear that she intends to rely on the Verbatims for the truth of the matter asserted therein: that Celgene's sales representatives purportedly discussed off-label uses with doctors. Accordingly, the Verbatims are textbook examples of impermissible double hearsay.

To overcome the bar against hearsay, Relator would need to show that "each layer of hearsay [] satisf[ies] an exception to the hearsay rule." *Sana v. Hawaiian*

*Cruises, Ltd.*, 181 F.3d 1041, 1045 (9th Cir. 1999). Relator has not done so and cannot do so. As to the first layer of hearsay (the doctor's recollection summary provided to AIRx), Relator has not identified any exception to the hearsay rule that she believes applies. That alone is grounds to preclude their admission. Moreover, even if the doctors' summaries somehow *could* get around the hearsay bar, Relator still would not be able to make this showing for the second layer of hearsay (AIRx's reports compiling the doctors' summaries). Indeed, Relator similarly has not identified any exception that would encompass this second layer of hearsay.

For these reasons, neither the doctors' summaries nor AIRx's reports compiling these summaries can get around the bar on hearsay. Because Relator would need to show that both layers of hearsay qualify for some exception, and because she cannot do so, the Verbatims are inadmissible.

## II. THE VERBATIMS ARE ALSO INADMISSIBLE BECAUSE THEY HAVE NOT BEEN—AND CANNOT BE—AUTHENTICATED.

Even if the Verbatims did not constitute double hearsay, they still would be inadmissible, as there is no way of authenticating the documents.

Rule 901 requires the proponent of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is," by providing "[t]estimony of a witness with knowledge" or through some other means. Fed. R. Evid. 901(a), (b)(1). But Relator cannot do so here. Because the Verbatims do not identify the individual responsible for compiling the doctors' summaries, the doctors themselves, or the Celgene sales representatives, there is no way to verify that these compilations are what they purport to be—accurate representations of the doctors' recollections of conversations with sales representatives. *See, e.g., Rubin ex rel. NLRB v. Vista Del Sol Health Servs., Inc.*, 80 F. Supp. 3d 1058, 1091 (C.D. Cal. 2015) (finding that proponent failed to authenticate a document that, among other things, "contains no authenticating indicia[] and is unsigned"); *Sullivan v. Temple Univ.*, No. CIV.A. 11-7305, 2014 WL 641341, at *4 (E.D. Pa. Feb. 19,

2014) (deeming documents inadmissible where "[t]he authors of the documents are not identified in the notes, and none of the notes are signed"). Indeed, not only is the doctor not identified, the Celgene representative who purportedly made the statement to the doctor is not identified either. And without some means of authenticating these documents, they simply cannot be admitted into evidence.

## **CONCLUSION**

For the foregoing reasons, Celgene's Motion should be granted, and the Court should exclude all Verbatim reports.

Dated: March 10, 2017

Respectfully submitted,

JONES DAY and SIDLEY AUSTIN LLP

By: /s/ *Kimberly A. Dunne*

Attorneys for Defendant
CELGENE CORPORATION