Kimberly A. Dunne (SBN 142721)
kdunne@sidley.com
Michelle B. Goodman (SBN 218607)
mgoodman@sidley.com
Sean A. Commons (SBN 217603)
scommons@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Karen P. Hewitt (SBN 145309)
kphewitt@jonesday.com
Brian D. Hershman (SBN 168175)
bhershman@jonesday.com
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Toni-Ann Citera (admitted *pro hac vice*)
tcitera@jonesday.com
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

Attorneys for Defendant
CELGENE CORPORATION

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al*., *ex rel.* BEVERLY BROWN,<br><br>Plaintiff-Relator,<br><br>v.<br><br>CELGENE CORPORATION,<br><br>Defendant. | Case No. 10-cv-03165 RGK (SSx)<br><br>Assigned to: Hon. R. Gary Klausner<br><br>**DEFENDANT CELGENE CORPORATION'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 9 TO EXCLUDE EVIDENCE OF PATIENT DEATHS IN CLL TRIALS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 25, 2017, at 9:00 a.m. before the Honorable R. Gary Klausner in Courtroom 850 of the United States District Court for the Central District of California, located at 255 East Temple Street, Los Angeles, California, Defendant Celgene Corporation ("Celgene") will and does hereby move the Court for an *in limine* order to preclude Plaintiff-Relator from making references to or offering evidence of patient deaths in clinical trials that Celgene conducted or otherwise supported to assess the use of Revlimid® in treating chronic lymphocytic leukemia.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, all pleadings and papers on file herein, and any additional argument and material the Court may consider at the hearing on this Motion.

This Motion is made following the conference of counsel, pursuant to Local Rule 7-3, which occurred on March 8, 2017 (the soonest possible date after the parties received this Court's Order on March 6, 2017).

Dated: March 10, 2017

Respectfully submitted,

JONES DAY and SIDLEY AUSTIN LLP

By: /s/ *Kimberly A. Dunne*

Attorneys for Defendant
CELGENE CORPORATION

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

In this "admittedly complex case" (Minute Order, Dkt. 396 at 1), it is imperative that the parties refrain from injecting any extraneous matters that do not bear on the questions the jury will be tasked with answering: whether Celgene "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). It is possible, however, that Relator will attempt to do precisely that, by presenting totally irrelevant—and highly prejudicial—evidence that some patients died during clinical trials of Revlimid® to treat chronic lymphocytic leukemia ("CLL"). The Federal Rules of Evidence foreclose any such effort.

*First*, evidence of deaths during clinical trials has no bearing on the sole issue in this case: whether Celgene knowingly caused any materially false claims to be submitted for Medicare and Medicaid reimbursement. And the Rules plainly state that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. *Second*, even if this evidence did have some conceivable probative value, that value would be substantially outweighed by a host of dangers, including the risks of unfairly prejudicing Celgene with inflammatory evidence, confusing the issues and misleading the jury, and wasting the parties', the jury's, and the Court's time.

Accordingly, Celgene respectfully requests that the Court exclude all evidence of patient deaths in clinical trials that Celgene conducted or otherwise supported to assess the use of Revlimid® in treating CLL.

## **BACKGROUND**

CLL is an incurable form of blood cancer. Coutre Rpt. ¶ 21 (Dkt. Nos. 329-16, 329-17). The disease occurs mainly in older adults; the average age at diagnosis is 71 years. *Id.* ¶ 27. CLL progresses through stages of increasing severity and risk levels. *Id.* ¶ 30. Patients in the early and even intermediate stages

are often asymptomatic and may not benefit from treatment. *Id.* ¶¶ 29, 33, 36. Patients in the later stages, by contrast, develop increasingly severe symptoms and face a dimmer prognosis, with a life expectancy of two to three years from their initial diagnosis. *Id.* ¶ 35.

For a long time, CLL patients had very few treatment options offering any meaningful benefits. *Id.* ¶ 22. In the early 2000s, however, clinical investigators began studying the use of thalidomide (the active ingredient in Thalomid®) and, later, lenalidomide (the active ingredient in Revlimid®) to treat CLL. *Id.* ¶ 23. Initial clinical trials showed promising results, with a number of patients seeing partial or complete remission. *Id.* ¶¶ 24, 54–56. Building on these initial studies, Celgene sponsored several studies of its own to further explore the use of lenalidomide in treating CLL. *Id.* ¶¶ 57, 72, 80. These studies, too, showed encouraging results. *Id.* ¶¶ 61, 73. However, in one of these studies in which patients were randomly assigned to receive either lenalidomide or another drug, Celgene observed an imbalance in the number of deaths among patients receiving lenalidomide. *Id.* ¶ 82. After making this observation, Celgene discontinued the study and took appropriate steps to communicate the safety issues to investigators and prescribers. *Id.* ¶¶ 82-83.

It is not uncommon for clinical trials to be discontinued due to an imbalance of adverse events. *Id.* ¶ 84. Indeed, part of the reason for conducting clinical trials is to identify possible adverse events associated with a particular course of treatment and to develop means of reducing the likelihood of those events. *Id.* This is particularly true of diseases like CLL that carry a grim prognosis and increase patients' risk of adverse events.

## ARGUMENT

The Court should not allow Relator to refer to or present evidence of patient deaths in Celgene-sponsored CLL clinical trials. This evidence is not probative of any fact in this case, and even if it were, that probative value would be substantially

outweighed by the risks of unfairly prejudicing Celgene, confusing and misleading the jury, and wasting time.

## I. PATIENT DEATHS THAT OCCURRED DURING CELGENE-SPONSORED CLL CLINICAL TRIALS ARE NOT PROBATIVE OF ANY ISSUE IN THIS CASE.

Because references to patient deaths that occurred during Celgene-sponsored clinical trials are not probative of any fact that "is of consequence in determining th[is] action," that evidence is inadmissible. Fed. R. Evid. 401(b), 402.

At trial, the jury will be tasked with determining whether Celgene violated the False Claims Act by causing doctors to prescribe and pharmacies to submit false claims for reimbursement to government programs. To prevail, Relator "must prove: '(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent.'" Order re Defs.' Mot. for S.J., Dkt. 369 at 3 ("S.J. Order") (quoting *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012)). References to or evidence of deaths in CLL clinical trials is not probative of *any* of these elements.

*First*, this evidence has no bearing on the first or fourth elements: whether false claims were submitted and whether Celgene knew these claims were false. As the Court explained in its summary-judgment ruling, falsity turns on whether claims "sought reimbursement for non-medically accepted uses of Thalomid® and Revlimid®." S.J. Order at 16. Medical acceptance, in turn, depends on a very narrow set of criteria—specifically, whether a particular use of a drug "'is approved under the Federal Food, Drug, and Cosmetics Act … [or] is supported by one or more citations included or approved for inclusion in any of' three listed compendia." *Id.* at 12 (quoting 42 U.S.C. § 1395w-102(e)(4)(A)(ii)). By contrast, medical acceptance *does not* depend on whether patients passed away in the course of clinical trials assessing a particular use of a drug. That is particularly so, where,

as here, the drug was to treat a disease that had a grim prognosis and a life expectancy of two to three years. Coutre Rpt. ¶ 35 (Dkt. Nos. 329-16, 329-17). Accordingly, the fact that some patients died in CLL clinical trials is irrelevant to these elements.

*Second*, deaths in CLL clinical trials are irrelevant to the materiality requirement. A false or fraudulent claim is material "if it has 'a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.'" S.J. Order at 17 (quoting 31 U.S.C. § 3729(b)(4)). This concept "looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002 (2016) (citation omitted). Because there is no evidence that isolated deaths in a clinical trial did or would have any bearing on the government's decision to pay a claim for Revlimid® in connection with the treatment of CLL (again, where, as here, the treatment options were limited and the prognosis dim), evidence of such deaths is not probative on the materiality element.

*Third*, and finally, evidence of deaths in CLL clinical trials is not probative of whether Celgene caused doctors to submit false claims. Relator does not allege that any false claims were submitted in connection with clinical trials. Nor could she: because Celgene itself sponsored and supported the trials, and provided free drugs to the patient in connection with the studies, *no claims* were submitted to the government in connection with the patients participating in the trials. And Relator has submitted no evidence that these deaths caused doctors to submit any false claims *outside* the context of those trials.

In short, evidence of deaths during Celgene-sponsored clinical trials is not probative of any element of Relator's claims. Those deaths simply do not make any element "more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). Accordingly, that irrelevant evidence is inadmissible.

## II. EVEN IF THIS EVIDENCE DID HAVE SOME PROBATIVE VALUE, IT WOULD BE SUBSTANTIALLY OUTWEIGHED BY THE RISKS OF UNFAIRLY PREJUDICING CELGENE, CONFUSING THE ISSUES, MISLEADING THE JURY, AND WASTING TIME.

Even if evidence of patient deaths in Celgene-sponsored clinical trials *did* have some conceivable probative value, that value would be substantially outweighed by risks articulated in Rule 403. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

*First*, this evidence would unfairly prejudice Celgene, as it would be "only directed towards inflaming the jury's passions." *Martin v. City of Barstow*, No. 13-cv-2193-AB, 2015 WL 12743591, at *4 (C.D. Cal. Nov. 5, 2015); *see also McCormick on Evid.* § 185 (7th ed. 2016) ("Prejudice can arise … from facts that arouse the jury's hostility or sympathy without regard to the probative value of the evidence."). The sole conceivable purpose for introducing this evidence would be to suggest to the jury that Revlimid® kills people, stirring up the jurors' passions and transforming this False Claims Act case into an emotion-driven referendum on Celgene itself. *See, e.g.*, Joint Stip. Re Motion to De-Designate Certain Confidential Discovery, Dkt. 265-2 at 2 ("Patients died when Celgene marketed Thalomid® and Revlimid® without proper dosing and safety warnings; they still die."). But this case is not about whether Relator can stir up negative views about Celgene; it is about whether Celgene engaged in specific acts deemed unlawful under the False Claims Act and analogous laws. Rule 403 exists precisely to prevent such efforts at presenting "matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of [their] prejudicial effect." *Id.* (quoting *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)).

*Second*, this evidence would present a substantial risk of "confusing the issues" and misleading the jury." Fed. R. Evid. 403. Admitting this evidence would risk affecting the jurors' view of Revlimid®, suggesting to them that this product could not have been a valid means of treating CLL. The truth, however, is that deaths are virtually unavoidable when dealing with cancer. In certain clinical trials—especially trials involving patients suffering from a severe illness like CLL—death results regardless of what treatment is administered. *See* Coutre Rpt. ¶ 21 (Dkt. Nos. 329-16, 329-17) (noting that "patients with high-risk CLL have a very poor prognosis," and that, in 2015, CLL was predicted to emerge in 14,620 patients and cause 4,650 deaths). The entire point of conducting clinical trials is to identify means of preventing these adverse results; the scientific method requires this process of trial and error in order to identify new and better treatments. It is unlikely, however, that the jury would receive the context necessary to understand this complex issue—and Celgene should not be forced to divert time to providing that context in order to keep the jury from being confused or misled.

*Finally*, this evidence would simply "wast[e] time." Fed. R. Evid. 403. This case is already complex enough, and a trial focused only on the actual elements of Relators' claims will still take weeks. There is simply no reason to lengthen the trial with litigation over deaths that occurred in the CLL clinical trials.

## **CONCLUSION**

For the foregoing reasons, Celgene's Motion should be granted, and Relator should be precluded from making references to or offering evidence of patient deaths in clinical trials that Celgene conducted or otherwise supported to assess the use of Revlimid® in treating CLL.

Dated: March 10, 2017

Respectfully submitted,

JONES DAY and SIDLEY AUSTIN LLP

By: /s/ *Kimberly A. Dunne*

Attorneys for Defendant
CELGENE CORPORATION