UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:    Attorneys Present for Defendant:
Not Present                          Not Present

**Proceedings:** (IN CHAMBERS) Order Re: Motion for an Order (1) Awarding 30% Statutory Relator Share and (2) Ordering the United States to Immediately Make the Relator Share Payment (DE 504)

## I. INTRODUCTION

On April 27, 2010, Relator Beverly Brown ("Relator"), individually and on behalf of the United States of America ("the Government"), filed a *qui tam* action under the False Claims Act ("FCA") against Celgene Corporation ("Celgene"). The Government declined to intervene in the case, and Relator and her counsel continued the litigation on their own. On March 22, 2017, Relator's claim resulted in a $259,269,640 settlement paid by Celgene to the Government.

Presently before the Court is Relator's Motion for immediate disbursement of the maximum 30% relator share of the settlement under 31 U.S.C. § 3730(d)(2). With the Court's permission, the Government deposited the full 30% ($77,780,892) in the Court Registry pending this Court's order. The Government opposes Relator's request for the maximum relator share, asserting that the minimum 25% is reasonable. Relator's former counsel, Grant & Eisenhofer, P.A. ("G&E"), previously filed a notice of lien on Relator's recovery and opposes Relator's request that the Court immediately disburse the relator share to her.

For the following reasons, the Court **GRANTS in part** Relator's Motion.

## II. FACTUAL BACKGROUND

Relator began working at Celgene in 2001. In late 2007, Relator became concerned because her manager instructed her to call physicians' offices to ask them to change billing codes associated with prescriptions of Celgene's drugs. Relator believed this practice was illegal. Relator reported the practice internally to management, and later contacted the FDA and consulted attorney Reuben Guttman ("Guttman"), who was then a lawyer with G&E. Relator claims she then realized that that Celgene had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

been engaging in additional unlawful practices relating to Celgene's promotion of the drugs Thalomid and Revlimid. Relator initiated this qui tam action in April 2010, and continued to litigate the matter after the Government declined to intervene in October 2013. Her complaint alleged that Celgene engaged in an unlawful campaign to promote Thalomid and Revlimid for a wide variety of cancers, although the drugs were not approved by the FDA for any cancer use until 2005. Relator also alleged that Celgene paid kickbacks to physicians in exchange for prescriptions of its drugs and that some of those prescriptions were paid by Medicare, Medicaid programs, TRICARE, and the Department of Veterans Affairs.

To aid discovery, Relator provided thousands of pages of internal Celgene documents to the Government that she had collected during her employment, wore a wire to gather information during one of Celgene's national meetings, and participated in meetings with the Government. The Government produced health insurance data and on claims for Thalomid and Revlimid, in addition to declarations from government representatives on the claims data produced.

The case proceeded through summary judgment, several days of mediation, and substantial trial preparation in anticipation of an April 25, 2017 trial date. In March 2017, the parties reached a $259,269,640 settlement. The Government approved the settlement four months later, only two weeks before the continued trial date. Celgene paid the settlement in full to the United States on July 26, 2017. The Court then entered an order dismissing the action, but it retained jurisdiction "to adjudicate, if necessary, Relator Brown's claim to a share of the proceeds of the Civil Action pursuant to 31 U.S.C. § 3730(d)." Despite attempts to meet and confer, the Government and Relator were unable to reach an agreement on what share of the settlement she should receive for her role in the litigation.

When Relator first initiated the *qui tam* action, she retained Guttman and his firm G&E as counsel. Relator signed a G&E retainer agreement drafted by Guttman. The retainer agreement provided that G&E is entitled to its awarded fees and costs, as well as 40% of any amount awarded to Relator. The agreement omitted the following provision required under California law: "the fee is not set by law, but is negotiable between the attorney and client."[1] In April 2015, Guttman left G&E. Relator decided to retain Guttman as her counsel and terminated G&E. G&E formally withdrew as Relator's counsel on May 15, 2015. Following its termination, G&E filed a notice of lien in this case pursuant to its retainer agreement with Relator.

On August 10, 2017, G&E filed a separate action in district court ("G&E action") against Relator seeking in part to enforce its lien. *See Grant & Eisenhoffer, P.A. v. Relator*, Case No. CV 17-05968 PSG

---

[1] G&E and Relator dispute whether California law governs the contract.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

(PJWx) (C.D. Cal. Aug. 10, 2017).[2] On September 15, 2017, the Government received a letter from G&E notifying the Government of its charging lien and asking the Government to withhold $41,359,350.48 from any amount distributed to Relator. In response, the Government filed an ex parte motion for an order to deposit $77,780,892—representing the maximum 30% relator share—into an interest-bearing account with the Court Registry, which the Court granted. Relator claims that G&E's lien is invalid because she voided the G&E fee agreement for its failure to comply with California Business and Professions Code section 6147.

### III.   DISCUSSION

Relator's Motion makes two requests. First, Relator seeks an order awarding her the maximum 30% relator share of the settlement. Second, Relator requests that the Court rule that G&E has no valid lien and order the relator share immediately released to her from the Court Registry. The Court addresses each in turn.

####   A.   Relator Share

Under 31 U.S.C. § 3730(d)(2), if the Government does not proceed with an action under the FCA, the person who brings the action or settles the claim shall receive an amount that is not less than 25% or more than 30% of the proceeds of the action and shall be paid out of the proceeds.[3] The relator ultimately receives the amount within that statutory range that the Court deems to be reasonable. 31. U.S.C. § 3730(d)(2). Here, Relator argues she is entitled to the maximum 30% share. The Government counters that the statutory minimum of 25% is reasonable. G&E takes no position.

Several factors are relevant to the Court's consideration of what share is reasonable. Courts have considered (1) the degree and importance of the relator's participation, *see, e.g.*, *United States ex rel. Pratt v. Alliant Techsys., Inc.*, 50 F. Supp. 2d 942, 948 (C.D. Cal. 1999) (awarding a 28% share to a relator who was actively involved in the claim and made specific efforts to further the investigation); (2) whether the relator incurred considerable personal and professional expense in pursuing the action, *see, e.g.*, *United States ex rel. Pedicone v. Mazak Corp.*, 807 F. Supp. 1350, 1353 (S.D. Ohio 1992), *overruled on other grounds by United States ex rel. Smith v. Lampers*, 69 Fed. Appx. 719 (6th Cir. 2003) (awarding a 30% share to a relator who incurred considerable personal and professional expense in pursuing an FCA claim for the government); and (3) whether the relator promptly reported the fraud, *see, e.g.*, *United States v. Gen. Elec.*, 808 F. Supp. 580, 584 (S.D. Ohio 1992) (awarding only a 22.5%

---

[2] G&E claims it filed another lawsuit over its fee dispute in the District of Columbia district court, *Grant & Eisenhofer P.A. v. Guttman v. Guttman, et al.*, Case No. 1:17-cv-07122-TJK, which has been transferred to the Central District but has not yet been assigned to a Court.

[3] Had the Government intervened, the relator would be entitled only to a 15–25% share. 31 U.S.C. §3730(d)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

share in an intervened action where the relator failed to promptly report the fraud once he became aware of it).

The parties disagree on whether the amount of recovery is also an appropriate consideration in determining the reasonable relator share. Relator argues that the primary consideration should be the relator's contribution to the lawsuit and that the size of the settlement is irrelevant. In contrast, the Government argues that Courts should consider the size of the settlement and award a lower share where, as here, the settlement is large.

The text of 31 U.S.C. § 3730(d)(2) does not identify any factors that the court should consider when determining a reasonable relator share. The Court found no binding precedent on the issue, and lower courts differ in their approach. Some have refused to consider the amount of the total recovery as a relevant factor. *See United States ex rel. Merena v. SmithKline Beecham Corp.*, 52 F. Supp. 2d 420, 434 (E.D. Pa. 1998) (reasoning based on legislative history), *rev'd on other grounds*, 205 F.3d 97 (3d Cir. 2000); *United States ex rel. Alderson v. Quorum Health Grp., Inc.*, 171 F. Supp. 2d 1323, 1134 n. 37 (M.D. Fla. 2001) (same). Others factored the size of the recovery into their decision. *See United States ex rel. Harrison v. Westinghouse Savannah River Co.*, Case No. 1:94-2332-22, Dkt. 188, at 7–8 (D.S.C. Jul. 23, 2002) (providing no reasons for considering the amount of recovery); *Garibaldi v. Orleans Parish Sch. Bd.*, 46 F. Supp. 2d 546, 566 (E.D. L.A. 1999) (same), *rev'd on other grounds*, 244 F.3d 486 (5th Cir. 2001). The Court thus turns to legislative history to guide its determination.[4]

The primary purpose of the *qui tam* provisions of the FCA is to "set up incentives to supplement government enforcement of the Act by encouraging insiders privy to a fraud on the government to blow the whistle on the crime." *United States v. Northrop Corp.*, 59 F.3d 953, 963 (9th Cir. 1995). Recognizing the difficulty in detecting fraud, the lack of resources on the part of Federal enforcement agencies, and the significant threat facing both the federal treasury and national security, Congress undertook an extensive revision of the FCA to encourage more private enforcement suits by increasing incentives to bring claims. *Id.*

The Government argues that, given the large settlement, paying the statutory minimum of 25% of the settlement (or $64.8 million) would appropriately incentivize private enforcement suits. It argues that a higher amount would result in a windfall to the relator at the expense of the public fisc. Relator

---

[4] DOJ Guidelines list fourteen factors for consideration for a possible increase in relator share, and eleven factors for consideration for a possible decrease. Both sets list the size of recovery as a relevant consideration. These factors are meant to guide the Government in negotiations with relators, and are not binding on courts. Some courts nevertheless consider them in their analysis. *See, e.g., United States ex rel. Alderson v. Quorum Health Grp., Inc.*, 171 F. Supp. 2d 1323, 1333 (M.D. Fla. 2001). The Government's argument does not rely on them in this case, however, and so the court does not weigh them in its analysis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

counters that awarding a lower percentage to a relator who uncovers fraud of a greater magnitude and achieves a high settlement is contrary to the incentivizing goal of the statute. Legislative history supports Relator's position.

For example, contrary to the Government's argument, a Senate committee report reveals that it "staggered the allowable percentages of recovery" and gave courts discretion in determining awards in recognition that "the contribution of one person might be significantly more or less than the contribution of another." S. Rep. No. 99-345 at 28. In addition, Congress refused to impose a cap on the total amount a relator could recover, despite proposals that doing so was necessary to prevent the same "windfalls" that the Government now professedly fears. *See* 132 Cong. Rec. H9382 (daily ed. Oct. 7, 1986) (prepared statement of Assistant AG Willard) (proposing that Congress impose an upward limit on the amount of the relator's recovery). Moreover, the Senate Judiciary Committee characterized the statutory minimum as a sort of "finder's fee" paid to the relator for doing no more than filing the action. *See* S. Rep. No. 99-345, at 28. A higher percentage is warranted depending on the nature of the relator's participation. All of this suggests that Congress did not intend for the amount of recovery to influence the percentage awarded to the relator. Accordingly, focus instead on Relator's contribution to the litigation in determining the reasonable relator share.

Relator's involvement in this case was significant. She provided investigative assistance by preparing for and providing information in meetings with the Government, collecting thousands of documents and emails from her work at Celgene, and wearing a wire to a multi-day national meeting for Celgene. Relator reported the fraud internally to management, contacted the FDA and legal counsel, and initiated this action while still employed at Celgene, which placed her at risk for retaliation. She contributed significant personal time and expense by litigating this case for several years. Relator and her counsel defeated a summary judgment motion and achieved a notably large settlement before trial. Accordingly, this Court finds that an award of 28% of the proceeds is in line with Congress' intent to incentivize the public to bring forward and pursue claims.

**B.      Attorney Lien**

G&E asserted a charging lien on the settlement proceeds in this case, which it now seeks to enforce in a separate action filed in the district court. An attorney's charging lien is "[t]he right of an attorney . . . to encumber money payable to the client . . . until the attorney's fees have been properly determined and paid." Lien, Black's Law Dictionary. The Court cannot disburse the relator share of the settlement proceeds to Relator until the validity and amount of the lien is determined. In her Motion, Relator requests that the Court declare the lien invalid and immediately distribute the relator share to her. G&E counters that the Court lacks jurisdiction to determine the validity of the lien and that the Court must hold the proceeds until the lien is adjudicated in a separate action. The Government takes no position.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
| Title | *United States of America et al. v. Celgene Corporation* | | |

Relator argues the Court has ancillary jurisdiction over fee disputes between a party and her attorney. "Ancillary jurisdiction is the power of a court to adjudicate and determine matters incidental to the exercise of its primary jurisdiction over a cause under review." *United States v. Sumner,* 226 F.3d 1005, 1013 (9th Cir. 2000). It is well-established that "a federal court properly may exercise ancillary jurisdiction 'over attorney fee disputes collateral to the underlying litigation.'" *K.C. ex rel. Erica C. Torlakson,* 762 F.3d 963, 968 (9th Cir. 2014) (quoting *Fed. Sav. & Loan Ins. Corp. v. Ferrante,* 364 F.3d 1037, 1041 (9th Cir. 2004)). But "the exercise of ancillary jurisdiction over an attorney's fees dispute is discretionary." *Torlakson,* 762 F.3d at 971. Before exercising ancillary jurisdiction, a district court should consider whether such jurisdiction would (1) "permit disposition by a single court of claims that are . . . factually interdependent"; or (2) "enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 379–80 (1994) (internal citations omitted).

The validity of the lien is not factually interdependent with Relator's claims against Celgene. Nor is adjudicating the validity of the lien necessary to effectuate the Court's order. The dispute poses no impediment to settlement—the Court already approved the settlement, Celgene paid the settlement in full, and the Court dismissed the case. The dispute has not prevented the Court from determining to what share of the settlement Relator is entitled. The only remaining issue is whether all 28% should be disbursed to Relator, or if some amount must be disbursed to G&E pursuant to their retainer agreement. Rather than spend its resources examining a contract unrelated to the merits of this case, the Court will issue its order conditioned on the separate, pending adjudication of the lien.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03165-RGK-SS | Date | December 15, 2017 |
|---|---|---|---|
| Title | *United States of America et al. v. Celgene Corporation* | | |

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** Relator's Motion as follows. The Court finds Relator is entitled to a relator share of 28% of the settlement. That amount will remain in the Court Registry pending adjudication of G&E's lien in either Case No. CV 17-05968 or Case No. CV 17-07122. The Court further orders that the remaining 2% (or $5,185,392.80) plus interest accrued be disbursed immediately to the United States.

**IT IS SO ORDERED.**

_____ : _____
Initials of Preparer
_____